UNITED STATES of America,
Plaintiff-Appellee,

v.

Marvalene MOODY, Defendant-Appellant.

No. 901, Docket 80–1464.

United States Court of Appeals,
Second Circuit.

Argued March 18, 1981.

Decided May 12, 1981.

Daniel J. Blank, Birmingham, Mich., for defendant-appellant.

William J. Muller, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, Vivian Shevitz, and Jane Simkin Smith, Asst. U. S. Attys., Brooklyn, N. Y., of counsel), for the United States of America.

Before LUMBARD and NEWMAN, Circuit Judges, and WERKER, District Judge.*

WERKER, District Judge:

Appellant Marvalene Moody appeals from a judgment of conviction entered on a guilty plea in the United States District Court for the Eastern District of New York (Nickerson, J.) for importing and possessing heroin with the intent to distribute in violation of Title 21 U.S.C. §§ 952(a), 960(a)(1) and 841(a)(1). Appellant's plea of guilty was entered pursuant to a court-approved agreement preserving her right to appeal the denial of her motion to suppress physical evidence seized from her by a United States Custom Patrol Officer and statements made by her during a border search. On this appeal, Moody challenges the denial of the suppression motion and Judge Nickerson's consideration of appellant's failure to cooperate with government authorities in determining her sentence.

* Of the United States District Court for the Southern District of New York, sitting by designation.

## FACTS

On August 27, 1980, Customs Patrol Officer Diane Hanson, while on duty at the International Arrivals Building at Kennedy Airport, was observing passengers arriving on a flight from Brussels. Officer Hanson first noticed Moody in line at the inspection belt waiting to be cleared. Hanson's suspicions were aroused when she observed that appellant appeared nervous while on line, "looking around and glancing all over the place." As appellant approached the inspection station, Officer Hanson noticed a bulky appearance around appellant's midriff. Officer Hanson noted that the "series of lines from one hip to the other" did not appear to be part of Moody's anatomy which was otherwise "very skinny." In addition, Hanson observed that Moody was only carrying two small pieces of luggage.

After appellant passed the inspection station, Officer Hanson approached her, identified herself as a Customs Officer and asked to see appellant's passport and Customs declaration. In response to Officer Hanson's questions, Moody stated that she was unemployed and had been vacationing in Brussels for two weeks. She also said that she did not have any friends or relatives in Brussels. Hanson then took appellant to a room in the Customs area where they were joined by Customs Officer Hardy. Hanson inspected the contents of Moody's luggage and inquired as to an item found in the luggage. Moody responded that a friend had given her the item in Brussels. Hanson also found a note in appellant's luggage reading "City, Antwerp, 258818, ask Vera or Hop."

While conducting a "patdown" of Moody, Hanson felt a rubbery thickness around her midriff. Appellant stated that she was wearing a girdle. Continuing the patdown, Hanson felt a powdery substance which she described as "caked talcum powder" in Moody's crotch. After further inquiry, Hanson told Moody that she wanted to see what she felt in the back between Moody's buttocks. After Moody pulled down her girdle, Hanson observed a plastic bag which she asked Moody to remove. Officer Hardy, who had been observing the patdown, asked Moody what the package was and Moody responded, "it is heroin." The contents of the plastic bag were field tested. Appellant was arrested and advised of her rights.

Appellant moved to suppress the physical evidence as well as her statements on the grounds that (1) there were insufficient grounds for a secondary search; (2) that the strip search was unreasonable; and (3) that appellant's statement should be suppressed absent *Miranda* warnings. After a hearing on appellant's motion, Judge Nickerson found that the Customs Officer had conducted a valid border search, and that in any event, there was "reasonable suspicion" to search Moody's person even if it were not considered a routine border search. With respect to appellant's motion to suppress her statement, Judge Nickerson ruled that it was admissible, analogizing the search to an investigative stop pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Appellant's counsel submitted a sentence memorandum to the district court in which he stated that "Ms. Moody contends that her refusal to cooperate is based upon constitutional protection and morally defensible motives." Emphasizing his concern over appellant's failure to cooperate, Judge Nickerson sentenced Moody as a youth offender, noting that if she cooperated, a motion for reduction of sentence could be filed on her behalf.

On appeal, appellant argues that (1) her detention and search does not qualify as a valid border search; (2) the strip search was unreasonable; (3) her statement "it is heroin" is inadmissible under *Miranda*; and (4) the trial court erred in considering her failure to cooperate in determining her sentence.

## DISCUSSION

### Border Search

■ The fourth amendment proscription against unreasonable searches is not violated by routine border searches. *United*

*States v. Nieves*, 609 F.2d 642, 645 (2d Cir. 1979), *cert. denied*, 444 U.S. 1085, 100 S.Ct. 1044, 62 L.Ed.2d 771 (1980). Moody contends that absent knowledge on the part of Officer Hanson that Moody was engaged in criminal behavior, Hanson was prohibited from initiating a secondary search, to wit, questioning her in the Customs area and the subsequent examination. In support of her contention, appellant relies upon language in *Nieves* and interprets that language as requiring "more than a combination of time and place in order to transform a secondary search into a valid border search." It is the element of knowledge, appellant argues, that is missing under these facts.

 This contention must be rejected. Although imaginative, appellant's reliance upon *Nieves* is misplaced. The language quoted by appellant relates to extended border searches and this case clearly cannot be construed as such. Appellant was stopped in the Customs area immediately upon leaving the inspection belt. Under these circumstances, appellant's detention and subsequent search need not be analyzed in light of the factors relevant to the inquiry concerning the validity of an extended border search. Similarly, appellant's reliance upon investigative stop cases is unhelpful. As noted in *Nieves*, the law governing inspection of individuals crossing our national borders is "responsive to a different set of imperatives" from those that apply to investigative stops of people already in the country. *Id.* at 645.

### Strip Search

Appellant contends that even assuming a valid border search occurred, the search of her person went beyond the authorized routine inspection and became a strip search which requires "reasonable suspicion." *United States v. Asbury*, 586 F.2d 973, 975–76 (2d Cir. 1978).

 A routine border search contemplates the search of a person's luggage and other personal effects. *Nieves* at 645–46. However, when a person is subjected to a relative degree of embarrassment or indignity when asked to remove an article of clothing, the imposition of a "reasonable suspicion" requirement is warranted. *Id.* While appellant was not specifically asked to remove any article of clothing, Officer Hanson informed her that she would have to see what the hard object was between her buttocks. Moody then pulled down the back of the girdle she was wearing, revealing the plastic bag which Officer Hanson asked her to remove. Even if these circumstances require the application of a "reasonable suspicion" standard, that standard was met.

As the Second Circuit noted in *Asbury*, "[i]n each case, reasonableness is determined by weighing the warranted suspicion of the border official against the offensiveness of the intrusion." *United States v. Asbury*, 586 F.2d at 976. The facts of this case establish reasonable suspicion on the part of Officer Hanson to justify the intrusion of appellant's person resulting from the patdown.

### Miranda Warnings

Appellant contends that her response "it is heroin" is inadmissible absent warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

 *Miranda* warnings must be given to one who is undergoing custodial interrogation. *Id.* at 444, 86 S.Ct. at 1612. *Miranda* warnings would have been unnecessary if appellant were being subjected to a routine customs inquiry. *United States v. Martinez*, 588 F.2d 495, 498 (5th Cir. 1979). However, where a defendant is questioned in a custodial situation, as here in a private room, the focus of the analysis turns to the interrogation in determining whether *Miranda* rights attach. The Fifth Circuit has found that *Miranda* warnings are required when the "information is sought for the purpose of using it against [a] person in a criminal proceeding." *United States v. Henry*, 604 F.2d 908, 915 (5th Cir. 1979). Moreover, the Supreme Court has recently found that "interrogation . . . must reflect a measure of compulsion above and beyond

that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). The Court went on to hold that interrogation consists of either express questioning or its functional equivalent. *Id.*

 In this case, appellant was expressly questioned in a private room. When asked what the substance was in the plastic bag, appellant's response, "it is heroin" was elicited for the purpose of incriminating her. This conclusion would seem to flow from Officer Hanson's initial suspicions which led to further questioning and a pat-down. It would thus appear that appellant's *Miranda* rights were violated and her statement inadmissible, although the effect of the admission of her statement would have been *de minimis*. *See United States v. Vasquez*, 638 F.2d 507 (2d Cir. 1980). Thus, if the district court erred in denying appellant's motion to suppress her statement, it was harmless error.

### Appellant's Sentence

Appellant contends that the trial court erred by considering her failure to cooperate with authorities in determining her sentence. If the trial court had enhanced its sentence on her failure to cooperate we would agree. *United States v. Bradford*, 645 F.2d 115 (2d Cir. 1980). We, however, read the sentence in a different way.

 There is no question that defense counsel in his sentencing memorandum made claim that defendant's refusal to cooperate was "based upon constitutional protection and morally defensible motives," thus bringing her case within the ambit of *Roberts v. United States*, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980). He added that this refusal "should not be taken as a failure to rehabilitate herself . . . but simply an inability to subject herself to additional fear, worry and self-destructive behavior." No request was made for a hearing to establish these bases for a refusal to cooperate although the trial court most certainly would have granted an *in camera* hearing had it been requested. The record indicates simply that the district judge accepted these statements by counsel on behalf of the appellant at face value, not as a basis for any enhancement of the sentence but as a reasonable explanation for appellant's refusal to cooperate. His subsequent suggestions as to the Witness Protection Program and the possibility of a Rule 35 Motion for reduction of sentence were simply meant to offer appellant solutions which she might voluntarily achieve. Under these circumstances, we do not perceive that the district court in any way attempted to coerce appellant into the dilemma of choosing between reprisal or a more severe sentence. Nor are we of the opinion that the court attempted to force the waiver of the appellant's fifth amendment rights. Sentencing which requires either or both is proscribed.

Appellant's conviction and sentence are affirmed.