UNITED STATES of America, Appellee,

v.

**Elpiko MORALES,**
**Defendant–Appellant.**

No. 41, Docket 87–1155.

United States Court of Appeals,
Second Circuit.

Argued Sept. 22, 1987.

Decided Nov. 17, 1987.

Peter B. Sobol, Asst. U.S. Atty. for the S.D.N.Y. (Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., John F. Savarese, Asst. U.S. Atty., of counsel), for appellee.

David Seth Michaels, Spencertown, N.Y., for defendant-appellant.

Before LUMBARD, OAKES, and KEARSE, Circuit Judges.

LUMBARD, Circuit Judge:

Elpiko Morales appeals from a judgment of conviction entered on March 27, 1987 in the Southern District of New York by Judge John E. Sprizzo following a jury trial. The jury found Morales guilty of both possession of narcotics and the separate offense of possession of narcotics while an inmate in the Metropolitan Correctional Center (MCC). On March 25, 1987, Judge Sprizzo sentenced Morales to a one-year term of incarceration for the first offense to be served concurrently with the three-year term Judge Sprizzo imposed for the second offense. Morales is currently serving this sentence.

Morales claims that the district court erred in admitting into evidence his response to two questions posed by Robert Newman, a physician's assistant at the MCC in Manhattan, during a routine medical examination following his commitment to that facility. He contends that Judge Sprizzo erred in refusing to suppress that testimony because those questions constitute a custodial interrogation pursued for an investigative purpose, designed to elicit incriminating admissions which required Newman to give him Miranda warnings which Newman did not do.

I.

On November 20, 1986, the grand jury returned a two count indictment against Elpiko Morales, charging him with (1) possessing with intent to distribute approximately 21.48 grams of cocaine and diluents on October 11, 1985 in violation of 21 U.S. C. §§ 812, 841(a)(1) and 841(b)(1)(B) (prior to amendments effective October 27, 1986) and (2) possessing approximately 21.48 grams of cocaine and diluents on October 11, 1985 while he was an inmate at the MCC, a federal correctional facility, in violation of 18 U.S.C. §§ 1791(a)(1)(C), 1791(a)(2) (Supp.1985). Before his trial, Morales moved to suppress the admission of certain statements he made to Robert Newman, a physician's assistant at the MCC, and to a supervisory prison official after Morales had been found in possession of cocaine during a routine physical examination.

The trial record shows that Morales arrived at the MCC during the afternoon of October 11, 1985. Morales had been transferred to the MCC from the United States penitentiary in Lewisburg, Pennsylvania where he was serving a federal sentence for a parole violation. Under the facility's procedures, he would have been "pat-searched" upon his arrival and then placed without restraints in a holding pen with the other newly arrived prisoners. Approximately two and one-half hours later, he was brought to a medical examination room for a routine physical given to all new inmates.

Newman, the physician's assistant who examined Morales, testified that according to standard MCC procedures, he questioned Morales about his medical history and conducted a physical examination. After concluding the examination, Newman testified that he returned to his desk to finish writing his medical report. Morales, who was standing about six to eight feet away from Newman at that time, pulled up his pants. Newman testified that he noticed a small white package fall to the floor at the same time Morales raised his pants. Newman

further testified that Morales bent down "nonchalantly" and put the package back in his pocket. According to Newman, after seeing this occur, Newman asked "What is that?" Morales replied "That was nothing. It was the papers they gave me up in R & D [Receiving and Discharge]." At trial, Newman testified that out of curiosity he then asked to see the package because the object that he saw fall had not seemed to fall as a piece of paper would have fallen. In response to this request, Morales walked toward Newman and took the package out of his pocket. Newman again asked, "What is that?" and Morales replied "I don't know."

After taking the package, which turned out to be a plastic bag, Newman asked Morales to step into the hallway with him. Newman then radioed MCC Operations Lieutenant Steven Epstein. When Epstein arrived, he took the plastic bag from Newman and asked Morales where he had gotten the bag. According to Epstein, Morales replied "I found it in R & D." He also conducted a field test of the contents of the bag. After he determined that the results of the field tests were positive, Epstein placed Morales in an administrative segregation cell. As Epstein was walking away from the cell, Morales motioned to him to come back to the cell and allegedly said "I have information to help you ... I want to speak with a federal agent." According to Epstein, he did not ask Morales any more questions and advised Morales that he would have a later opportunity to speak with federal agents.

Newman testified that as part of his routine he had checked the examination room prior to Morales's arrival and recalled that there were no stray packages or articles in the room when Morales entered. Evidence also established that despite security measures, narcotics are smuggled into the institution by new inmates through the R & D area and that even inmates who had been previously pat-searched had been found during subsequent stripsearches to possess narcotics. In addition, an experienced drug enforcement agent testified that the amount of cocaine that Morales possessed was inconsistent with personal use.

Following a suppression hearing on February 23 and 24, 1987, Judge Sprizzo found (1) that Morales's statements to Newman were admissible, (2) that Morales's first statement to Epstein responding to Epstein's question about where he had found the packet had to be suppressed, and (3) that Morales's final statement to Epstein that he had some information was voluntary (*i.e.* not the product of interrogation) and, therefore, admissible.

On February 25, 1987, after a two-day trial, the jury found Morales guilty of the lesser-included offense of simple possession of narcotics on Count One and of the offense of possessing narcotics while an inmate in a federal facility charged in Count Two. On March 25, Judge Sprizzo sentenced Morales to a one-year prison term on Count One to be served concurrently with a three-year term he imposed on Count Two. The sentence was to run consecutively to an unrelated sentence that Morales was then serving.

## II.

Morales's principal claim is that the district court erred by admitting his response to the two questions asked of him by Newman. He claims that the questions were asked while he was in custody and were asked with an investigative purpose and, as a result, the district court should have suppressed the testimony because Newman did not give him warnings in accordance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Morales's secondary contention is that two cautionary instructions given by Judge Sprizzo were inadequate to cure the prejudice resulting from (1) the District Court's remarks to the jury panel during voir dire concerning Morales's prior conviction and (2) testimony by Newman that Morales had told him that certain injuries were the result of a "tussle" with the authorities.

The protections afforded by *Miranda* must be strictly enforced but should only be enforced in situations which implicate the concerns that motivated that deci-

sion. *See Berkemer v. McCarty,* 468 U.S. 420, 437, 104 S.Ct. 3138, 3148, 82 L.Ed.2d 317 (1984). The situations requiring that Miranda warnings be issued have generally been termed "custodial interrogation[s]." *See Minnesota v. Murphy,* 465 U.S. 420, 429, 104 S.Ct. 1136, 1143, 79 L.Ed.2d 409 (1984). Custodial interrogation exists when a law enforcement official questions an individual and that questioning was (1) conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak, *Miranda,* 384 U.S. at 467, 86 S.Ct. at 1624 (the in custody requirement) and (2) when the inquiry is conducted by officers who are aware of the potentially incriminatory nature of the disclosures sought, *Garner v. United States,* 424 U.S. 648, 657, 96 S.Ct. 1178, 1183, 47 L.Ed.2d 370 (1976) (the investigative intent requirement). Only questioning that reflects a measure of compulsion above and beyond that inherent in custody itself constitutes interrogation the fruits of which may be received in evidence only after *Miranda* warnings have been given. *See United States v. Moody,* 649 F.2d 124, 127–28 (2d Cir.1981). The questions asked must have been both likely to elicit an incriminating response and to produce psychological pressures that will subject the individual to the "will" of his examiner. *See Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980); *Miranda,* 384 U.S. at 457–58, 86 S.Ct. at 1618–19 (1966).

■ We conclude that none of Judge Sprizzo's findings from Newman's testimony that Newman had no investigative purpose when he asked Morales questions about the package that had fallen to the floor of the examination room as Morales was pulling up his pants at the end of the examination were clearly erroneous. Judge Sprizzo found that Newman had, at most, only a fleeting impression that the package might be contraband at the time he questioned Morales about the package.

Newman was not trained in interrogation and had no responsibility to investigate transgressions of prison rules or illegal conduct. Although he testified that he thought it was possible that the package contained contraband, he also testified that based upon his experience with other inmates and observations of Morales, he did not believe that Morales was in possession of contraband nor that Morales was likely to provide incriminating answers to his questions. His line of questioning seems to have been largely the product of curiosity rather than being investigatory in nature.

Since *Miranda* warnings are mandatory only when an individual is both in custody and subjected to interrogation, having upheld Judge Sprizzo's finding that Newman's questioning of Morales did not constitute interrogation, we need not consider whether Morales was "in custody."

Morales's second contention is that despite cautionary instructions to the jury, he was prejudiced by (1) Judge Sprizzo's statement to the jurors during voir dire that Morales had a prior conviction and (2) the admission of Newman's testimony that Morales had told him that he had a "tussle" with the authorities.

■ It was an essential element of proof of the crime charged under 18 U.S.C. § 1791(a)(2) that the jury would hear evidence that Morales was an inmate of a federal prison and that he was there because he had been convicted of some offense other than the charges to be considered by the jury. Under § 1791, an inmate means a person like Morales who was incarcerated following a conviction, not merely a pretrial detainee. This element of § 1791 was implicit in the district court's ruling that proof of Morales's prior conviction was an essential element of the offense charged under § 1791(a)(2). This interpretation is supported by the legislative history of § 1791. *See* S.Rep. No. 225, 98th Cong., 2d Sess. *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3522 (offense in § 1791 "was deliberately written to apply only to inmates (whether convicted in a federal or state court) in a federal penal institution.") Judge Sprizzo told the jurors that they would learn about Morales' prior conviction during the trial

and that they were not to consider this in any way in reaching their verdict on the charged offenses. We believe this cautionary instruction was necessary to ensure that the jurors would understand that they were not to consider the evidence of the prior conviction in determining Morales's guilt or innocence. Indeed, it is difficult to see how the trial judge could have done otherwise. The Supreme Court has recently reaffirmed its faith in such cautionary instructions. *See Richardson v. Marsh,* — U.S. —, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987); *Greer v. Miller,* — U.S. —, 107 S.Ct. 3102, 3109 & n. 8, 97 L.Ed.2d 618 (1987). We believe that jurors can be expected to follow such instructions. *See United States v. Teitler,* 802 F.2d 606, 617 (2d Cir.1986).

■ As to Newman's testimony that Morales told him about having a "tussle" with prison authorities, prejudice also seems unlikely because, upon objection to Newman's testimony by Morales' counsel, Judge Sprizzo immediately instructed the jury to disregard the testimony and told them it was "stricken from the record." The Supreme Court has recently found that a similar situation did not violate the defendant's right to due process. *See Greer v. Miller,* 107 S.Ct. at 3109. We do not believe that the jury's hearing of this stricken testimony necessitates reversal of the conviction.

Affirmed.

OAKES, Circuit Judge (concurring):

A person is "in custody" where "there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam) (quoting *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977)). When Judge Sprizzo considered Morales's motion to suppress statements made following his prison physical, he assumed that Morales was in custody. Many other courts, including the Supreme Court, have assumed that prisoners are "in custody." *See, e.g., Mathis v. United States,* 391 U.S. 1, 4, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968) (state

prisoner in custody when questioned by Internal Revenue Service investigator); *Flittie v. Solem,* 775 F.2d 933, 943 n. 17 (8th Cir.1985) (dictum) (en banc) (prisoner in state penitentiary in custody), *cert. denied,* 425 U.S. 1025, 106 S.Ct. 1223, 89 L.Ed.2d 333 (1986); *United States v. Cassell,* 452 F.2d 533, 540 (7th Cir.1971) (federal prisoner in prerelease guidance center in custody); *Carter v. McGinnis,* 351 F.Supp. 787, 792 (W.D.N.Y.1972) (prisoners at Attica Correctional Facility in custody); *Blyden v. Hogan,* 320 F.Supp. 513, 519 (S.D.N.Y. 1970) (prisoner at Manhattan House of Detention in custody); *United States v. Harrison,* 265 F.Supp. 660, 662 (S.D.N.Y.1967) (prisoner at Dannemora State Prison in custody).

Recently, several circuits have concluded that "a prison inmate is not automatically always in 'custody' within the meaning of *Miranda.*" *United States v. Conley,* 779 F.2d 970, 973 (4th Cir.1985), *cert. denied,* — U.S. —, 107 S.Ct. 114, 93 L.Ed.2d 61 (1987); *see also Cervantes v. Walker,* 589 F.2d 424, 428 (9th Cir.1978). In their view, a prisoner is in custody only where his or her freedom is restricted "over and above that in his normal prisoner setting." *Cervantes,* 589 F.2d at 428; *see also Conley,* 779 F.2d at 973. These courts purport to articulate objective criteria for assessing restrictions including "the language used to summon the individual, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and the additional pressure exerted to detain him." *Cervantes,* 589 F.2d at 428. However, courts applying these factors invariably conclude that the challenged interrogations are noncustodial, suggesting that the factors may merely disguise a denial of prisoners' Fifth Amendment rights. *See, e.g., United States v. Cooper,* 800 F.2d 412, 414–15 (4th Cir.1986) (prisoners moved from cells to conference room and questioned by correctional treatment specialist ten days after stabbing incident not in custody); *Conley,* 779 F.2d at 973–74 (prisoner in handcuffs and full restraints in conference area awaiting medical treatment not in custody); *Cervantes,* 589 F.2d at 426–27 (prisoner

moved from cell to six-by four-foot jail library and questioned by shift commander and sheriff's deputy standing one and one-half to two feet away about stabbing incident and green odorless substance in matchbox not in custody). *Cf. United States v. Scalf,* 725 F.2d 1272, 1276 (10th Cir.1984) (prisoner involved in stabbing incident questioned by security officer standing outside prison cell not in coercive environment; focus on interrogation prong).

The principles of *Miranda* support a rule that prisoners are per se "in custody." Prisoners are obviously "deprived of [their] freedom of action in a[ ] significant way." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). They are aware that they cannot escape persistent custodial interrogation. *Cf. Minnesota v. Murphy,* 465 U.S. 420, 433, 104 S.Ct. 1136, 1145, 79 L.Ed.2d 409 (1984). Prison is "inherently coercive," *Roberts v. United States,* 445 U.S. 552, 560, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980), and is a setting particularly susceptible to abuse. Questioning in prison involves neither brief detention nor public scrutiny, essential qualities of situations not requiring *Miranda* warnings. *See, e.g., Berkemer v. McCarty,* 468 U.S. 420, 437–38, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (*Miranda* warnings need not precede roadside questioning of motorists detained pursuant to routine traffic stops).

Moreover, the policy reasons for rejecting prison as per se custodial are not persuasive. Such a rule would not seriously disrupt prison administration. Warnings would not be required prior to informal conversations between inmates and prison guards. The sole consequence would be that statements elicited during interrogation would be admissible in criminal proceedings only if *Miranda* warnings were given. This rule would provide equal protection to prisoners and nonimprisoned persons.

Assuming Morales was in custody, *Miranda* warnings were required if there were questions "that the police should [have] know[n] [were] reasonably likely to elicit an incriminating response." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980), *cited with approval in Arizona v. Mauro,* — U.S. ——, 107 S.Ct. 1931, 1935, 95 L.Ed.2d 458 (1987). Questions by a prison official, even a physician's assistant, asking a prisoner to identify a white package that fell from his pants following a prison-mandated examination were likely to evoke an incriminating response and therefore constituted interrogation. *See United States v. Moody,* 649 F.2d 124, 128 (2d Cir.1981) (customs officer's question asking suspect to identify plastic bag that fell after patdown was interrogation). *But cf. Scalf,* 725 F.2d at 1276 (prison officer's conversation with prisoner from outside cell shortly after stabbing was "on-the-scene" inquiry). Although the physician's assistant was not trained as an investigator nor responsible for investigating prison infractions or criminal violations, he did have security training. He questioned Morales after he thought the plastic bag might contain contraband which would have to be seized because possession might be an infraction. The suggestion that the repeated questions were products of normal curiosity is not persuasive.

Moreover, Judge Lumbard's opinion appears to look only to the interrogator's purpose in asking the questions. The *Innis* Court, like the *Mauro* Court after it, stated that the definition of interrogation— "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect"—"focuses primarily upon the perceptions of the suspect, rather than the intent of the police." 446 U.S. at 301, 100 S.Ct. at 1689, quoted in *Mauro,* 107 S.Ct. at 1935.

As Morales was subject to custodial interrogation without being advised of his *Miranda* rights, the district court erred in admitting his statements. Morales argues that this error was not harmless beyond a reasonable doubt; had the jury not heard the statements, he contends, it might have concluded he found rather than possessed the drugs. I disagree. Although his responses were arguably false exculpatory statements, his reply that he did not know

what the package contained was consistent with his defense. Moreover, field tests revealed the package that fell from Morales pants did contain cocaine, making the admission of his statements harmless error. *See Moody*, 649 F.2d at 128 (denial of motion to suppress statement made without *Miranda* warnings during custodial interrogation harmless error where defendant charged with importing and possessing heroin with intent to distribute, statement described contents of plastic bag on defendant's body as heroin, and plastic bag in fact contained heroin); *cf. United States v. Vasquez*, 638 F.2d 507, 525 (2d Cir.1980) (denial of motion to suppress evidence found in house pursuant to search made without warrant or consent had de minimis effect where defendant charged with possession of cocaine and cocaine found in defendant's car), *cert. denied*, 454 U.S. 847, 102 S.Ct. 165, 70 L.Ed.2d 135 (1981).

Accordingly, I concur in the judgment affirming Morales's conviction.