**UNITED STATES of America,**

v.

**Guido GULLA, Vito Gulla, and Guido Importer and Wholesaler, Inc., Defendants.**

No. 92 Cr. 1236 (VLB).

United States District Court, S.D. New York.

Oct. 30, 1993.

Alan J. Brudner, Asst. U.S. Atty., New York City, for U.S.

Alan Levine, Kronish, Lieb, Weiner & Hellman, New York City, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This case involves alleged use of false documents in violation of 18 U.S.C. §§ 371, 542 and 1001 to circumvent a retaliatory 100% duty imposed on imported tomatoes and other vegetable products to induce European nations to drop restrictions on hormone-containing meat products of the United States. An increase of duty from 13.6% to 100% on tomatoes but not tomato sauce was based on a Presidential finding, citing no sources, that hormone use was not harmful to human health. The legal background for this duty increase is discussed in my memorandum order signed September 13, 1993,[1] denying defendants' motion to dismiss the indictment but granting additional discovery and other relief to defendants.

Defendants move under Fed.R.Cr.P. 12(b) and 41(f) to suppress statements made during a search pursuant to warrant of the corporate defendant's premises. After conducting an evidentiary hearing, upon which are based the factual findings summarized in this memorandum order, I deny the motion. As I must, I reserve decision as to the admissibility of any statements taken from defendants during the search until the issue may arise at trial.

### II

During a search of defendants' business premises by more than ten (10) armed United States Customs agents, the defendant Guido Gulla ("Guido") was asked to identify the contents of a large vehicle parked outside the premises. Guido responded that whatever was indicated in the invoice was in the vehicle.

The lead Customs agent indicated that Customs had knowledge that tomatoes entered as tomato sauce were in the vehicle. Guido then made a statement—concededly false—that there were some tomatoes there but that he had not had time to alter the paperwork because of a belated telephonic disclosure by the shipper that there was not enough tomato sauce for the shipment, so that some tomatoes had been substituted.

The search of defendants' premises lasted for several hours, during which Customs agents told the defendants that they were looking at possible prison terms of up to fifty (50) years and fines of up to one million ($1,000,000.00) dollars because of false en-

1. *United States v. Gulla*, 833 F.Supp. 274, (S.D.N.Y.1993).

tries already discovered ·by Customs. The individual defendants remained in the premises during the search and defendants did not eat, although the agents ordered pizza to be delivered, and then ate it on the premises. Neither of the defendants (or any of their employees) was told that he was under arrest.

The Customs agents intended by their questioning to induce the defendants to cooperate, and to name other importers engaged in the importation of tomatoes invoiced as tomato sauce or other less dutiable tomato products. The Customs Service deliberately targeted smaller importers such as the defendants, in order to cause them to inform on larger importers throughout the industry. The Customs agents did not disclose their strategy to defendants.

Conflicting testimony was given by the individual defendants and by Customs agents with regard to whether or not either of the Gullas was told that he could not leave, that he did not need a lawyer, and that he could not have a lawyer present. Guido testified that agents took his personal files as well as business documents and never returned them, but no motion for return of such items has been filed.

Guido's son Vito Gulla ("Vito") testified that he telephoned a friend during the search, and that the unnamed friend told Vito that Vito should have a lawyer present and should answer no questions. Vito did not testify that the friend ever came to the premises or that the friend asked whether or not Vito had an attorney.

The friend in question turned out to be a New Rochelle police officer who was subsequently called as a defense witness. He came to the search site immediately after receiving a call from Vito and remained throughout the balance of the search. The agents asked who the new arrival was and were told that he was a friend; they did not inquire further, nor did they ask the new arrival to leave or object to his continued presence. Customs agents who testified were not questioned by defense counsel about the presence of the interloper.

It strains belief that Customs agents conducting a search of business premises would bar the owners of the business from leaving the premises or would indicate that counsel could not be present, and yet would permit an interloper to remain on the premises during several hours of continued search without even asking the name of the person, or why that person was present. The Gullas were terrified by the manner of entry of the armed agents, by the number of agents involved, and by the number of years in prison they were told they might face; neither, however, was told that he could not leave, or that he could not have counsel present.

### III

■ If statements are taken from a criminal defendant as a result of "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of . . . freedom of action in any significant way," such statements may be suppressed unless warnings concerning the person's rights are provided. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); see *Campaneria v. Reid*, 891 F.2d 1014 (2d Cir.1989), *cert. denied* 499 U.S. 949, 111 S.Ct. 1419, 113 L.Ed.2d 471 (1991). No formal arrest is necessary. *Berkemer v. McCarty*, 468 U.S. 420, 441, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984). Interrogation covered by these rules occurs where a purpose of questioning is to secure incriminating responses. *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980); *United States v. Morales*, 834 F.2d 35, 37–38 (2d Cir.1987).

■ I find no arrest or deprivation of freedom of action or movement, and conclude that no *Miranda* violation has been established, nor is there any other ground for suppressing statements elicited by questioning during the search.

### IV

The criteria for suppression and for admissibility differ. Even legally obtained information may be so unreliable or confusing as to warrant exclusion under Fed.R.Evid. 403. That determination, however, is best made at

288

trial in light of additional information then available. Further developments may support the admissibility of Guido's false exculpatory statements during the Customs search of his business premises,[2] but such developments must be adequate to overcome the coercive atmosphere suggested by references to a potential fifty year term of imprisonment. That these references followed rather than preceded Guido's false exculpatory statements does not remove their relevance. Subsequent conduct can shed light on earlier events.[3] The fifty-year imprisonment threat, concededly uttered, suggests that the attitude communicated by the agents had a similar intimidating aspect at earlier stages of the search, even though conveyed non-verbally.

SO ORDERED.

2. For example, items seen or taken during the search may support or repel any inference concerning the deliberate rather than panic-driven nature of Guido's false exculpatory statement concerning a last-minute discovery based on a telephone conversation with the exporter that there was not enough tomato sauce to fill the container parked in front of the premises searched, so that some tomatoes had to be substituted.

3. Events after a period covered by an indictment or complaint may shed light on earlier behavior. See *United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir.1990); *Eatz v. DME Unit of Local Union No. 3*, 794 F.2d 29 (2d Cir.1986); *Phoenix Canada Oil Co. v. Texaco*, 842 F.2d 1466, 1487 (3d Cir.1988), *cert. denied* 488 U.S. 908, 916, 109 S.Ct. 259, 273, 102 L.Ed.2d 247, 273.

The totality of a situation must be evaluated to arrive at a proper interpretation of it. *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 707, 82 S.Ct. 1404, 1414, 8 L.Ed.2d 777 (1962); Tushnet, "Book Review," 82 Colum.L.Rev. 1531, 1536–39 (1982) (arguing against "disaggregation" of facts).