**UNITED STATES of America,**

v.

**Patrick JENSEN, Defendant.**

**No. CR–01–01222 (ADS).**

United States District Court,
E.D. New York.

March 25, 2002.

Alan Vinegrad, United States Attorney, by James Miskiewicz, Assistant United States Attorney, Brooklyn, NY, for United States.

Felix T. Gilroy, Staten Island, NY, for Patrick Jensen.

SPATT, District Judge.

In this case, the Court is dealing with issues which may be more comfortably handled in a state court in Wyoming.

This case involves charges against the defendant Patrick Jensen ("Jensen" or the "defendant") for making false statements to an officer in the United States Fish and Wildlife Service ("USFWS") in violation of 18 U.S.C. § 1001(a)(2). Presently before the Court is a motion by the defendant to (1) inspect the grand jury minutes; (2) dismiss the indictment; (3) suppress statements made by the defendant; (4) require a bill of particulars; (5) produce all documents and tangible objects; (6) produce all *Brady* material; and (7) produce *Jencks* Act material.

## I. BACKGROUND

The Federal Government owns the Wertheim National Wildlife Refuge in Shirley, New York (the "Wertheim Refuge" or the "Refuge"). USFWS, a division of the United States Department of the Interior, is responsible for the preservation and protection of wildlife in the Wertheim Refuge. In particular, USFWS is responsible for providing law enforcement to protect wildlife from poaching activities and ensure the safety of visitors at the Refuge.

On November 20, 2000, an unidentified USFWS employee heard gunshots coming

from the vicinity of the Wertheim Refuge. Minutes later, USFWS officer Bruce Marto ("Marto") observed the defendant standing near a fire trail which led away from the general vicinity of the gunshots. This section of the Refuge was closed to the public. Because the defendant was trespassing on federal property, Marto asked the defendant for identification. The defendant produced a New York State driver's license.

Marto then asked the defendant whether he was involved in the gunshots. The defendant responded that he had heard the gunshots but had no involvement with them. The defendant also stated that he entered the Refuge without permission at the northern end of the fire trail and was merely walking through the Refuge to observe wildlife. Next, Marto asked the defendant whether he was in possession of a firearm. The defendant responded that he was not in possession of a firearm and he did not own a firearm of any kind. Marto then allowed the defendant to walk north on the fire trail in the direction of the exit of the Refuge.

Shortly thereafter, Marto discovered a large antlered 8–point white-tailed deer with a fresh gunshot wound to the back of its neck. Immediately, Marto proceeded in the direction of the defendant attempting to find him. At the exit of the Refuge, Marto saw the defendant and approached him.

Now joined by police officers from the Suffolk County Park, Marto asked the defendant about his involvement or knowledge concerning the gunshots and the wounded deer. The defendant again denied having any knowledge of the gunshots and denied any involvement in the wounding of the deer. The defendant also stated that he saw several dead deer in the vicinity where Marto discovered the wounded deer.

Apparently, after this questioning, Marto allowed the defendant to leave the area. Thereafter, unidentified USFWS officers searched the field and discovered three headless white-tailed deer carcasses and one freshly killed large antlered 15–point white-tailed deer carcass.

On November 21, 2000, unidentified officers of the Refuge, unidentified personnel from the New York State Department of Environmental Conservation ("DEC") and DEC Forest Ranger Mark St. Claire ("St. Claire") discovered a black soft-sided case containing a 30–06 Remington rifle model 700 DBL, bearing serial number B6720779 (the "Remington rifle") leaning against a tree which was located about three feet outside the boundary of the Refuge. Later that day, Marto and St. Claire removed a discharged bullet from the 15–point white-tailed deer carcass. Marto and St. Claire also recovered spent shell casings in and around the vicinity of where the Remington rifle was found.

Subsequently, the bullet and shell casings were sent to the National Fish and Wildlife Forensics Laboratory (the "NFWFL") for ballistic tests. After its investigation, the NFWFL determined conclusively that the shell casings were from bullets discharged from the Remington rifle and that the discharged bullet in the deer had the same rifling characteristics and could have been fired though the barrel of the Remington rifle.

On December 4, 2000, the Bureau of Alcohol, Tobacco and Firearms ("ATF") conducted a trace on the serial number of the Remington rifle. The trace revealed that one John DiPalermo ("DiPalermo") purchased the Remington rifle from Edleman's in Farmingdale, New York on October 11, 1986. On January 4, 2001, Special Agent Carmine Sabia of the USFWS ("Sabia") spoke with DiPalermo concerning the Remington rifle. DiPalermo told Sabia

that he sold the rifle about one year ago. DiPalermo also produced the bill of sale for the rifle which was signed by the defendant as the purchaser.

## II. DISCUSSION

### A. As to the Inspection of the Grand Jury Minutes

Rule 6 of the Federal Rules of Criminal Procedure provides that a district court may permit the disclosure of matters before the grand jury "upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury...." Fed. R.Crim.P. 6(e)(3)(C)(ii). "Grand jury proceedings carry a 'presumption of regularity.'" *United States v. Torres,* 901 F.2d 205, 232–33 (2d Cir.1990) (citing *Hamling v. United States,* 418 U.S. 87, 139 n. 23, 94 S.Ct. 2887, 2918 n. 23, 41 L.Ed.2d 590 (1974) (internal quotations and citations omitted).

However, review of the grand jury minutes is "rarely permitted without specific factual allegations of government misconduct." *Torres,* 901 F.2d at 233 (citation omitted). Further, " 'as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants.'" *Id.* (quoting *Bank of Nova Scotia v. United States,* 487 U.S. 250, 254, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988).

■ The affidavit of Felix T. Gilroy, Esq. executed on February 12, 2002 (the "Gilroy Affidavit") and the memorandum of law in support of the defendant's motion (the "defendant's memorandum") are devoid of any specific factual allegations of government misconduct. Nor is there any other viable reason to permit such inspection. Accordingly, the motion to inspect the grand jury minutes is denied.

### B. As to the Dismissal of the Indictment

Rule 12 of the Federal Rules of Criminal Procedure provides that a district court may dismiss an indictment based upon "(1) ... defects in the institution of the prosecution; or (2) defects in the indictment or information...." Fed. R.Crim.P. 12(b)(1) & (2). In conclusory fashion, the defendant contends that the indictment must be dismissed because insufficient evidence exists to support the indictment.

■ Insufficiency of the evidence before a grand jury is not a valid ground to dismiss an indictment. *See United States v. Casamento,* 887 F.2d 1141, 1182 (2d Cir.1989) ("An indictment, if valid on its face, may not be challenged on the ground that it is based on inadequate evidence.") (citing *United States v. Contreras,* 776 F.2d 51, 54 (2d Cir.1985) (citing *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408–09, 100 L.Ed. 397 (1956)). *See also United States v. Schlesinger,* 598 F.2d 722, 726 (2d Cir.1979).

■ Furthermore, no defects in the indictment warrant dismissal. An indictment need only track the language of the statute charged and state the approximate time and place of the alleged crime. *See United States v. Pirro,* 212 F.3d 86, 92 (2d Cir.2000) ("[W]e have consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.") (internal quotations and citations omitted). Here, the indictment contains one count under 18 U.S.C. § 1001(a)(2) ("Section 1001(a)(2)"). Moreover, the language of the indictment essentially tracks Section 1001(a)(2) *verbatim* and provides the date and place of the alleged crime. More is not needed. Accordingly, the motion to dismiss the indictment is denied.

## C. As to the Suppression of the Statements

Miranda warnings are required only if law enforcement agents interrogate a person who is in custody. *United States v. Kirsh*, 54 F.3d 1062, 1067 (2d Cir.1995) (citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). "The test used in determining whether a defendant was in custody is an objective one that (a) asks whether a reasonable person would have understood herself to be subjected to restraints comparable to those associated with a formal arrest, and (b) focuses upon the presence or absence of affirmative indications that the defendant was not free to leave." *Kirsh*, 54 F.3d at 1067 (internal quotations and citations omitted).

"An accused is in custody when, even 'in the absence of an actual arrest, law enforcement officials act or speak in a manner that conveys the message that they would not permit the accused to leave.'" *Id.* (citing *Campaneria v. Reid*, 891 F.2d 1014, 1021 n. 1 (2d Cir.1989), *cert. denied*, 499 U.S. 949, 111 S.Ct. 1419, 113 L.Ed.2d 471 (1991). *See also United States v. Morales*, 834 F.2d 35, 38 (2d Cir.1987) (stating that a custodial setting is evidenced by "inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak. . . .").

The defendant moves to suppress the statements that he allegedly made during the two encounters with Marto on November 20, 2000. The affidavit and complaint in support of the arrest warrant in this matter executed by Carmine G. Sabia (the "Sabia Affidavit" or the "Affidavit") indicates that the defendant made essentially three statements during his first encounter with Marto: (1) I heard gunshots but had no involvement with them; (2) I entered the Refuge without permission at the northern end of the fire trail and was walking through the Refuge to observe wildlife; and (3) I am not in possession of a firearm and do not own a firearm of any kind.

The Affidavit further indicates that the defendant essentially made three statements during his second encounter with Malto and police officers from the Suffolk County Park: (1) I do not know anything about the gunshots; (2) I was not involved in the wounding of the deer; and (3) I saw several dead deer in the vicinity where Malto discovered the wounded deer.

However, the Affidavit lacks certain critical facts required to properly decide whether the defendant was in custody when he made the alleged statements. In particular, the Affidavit does not indicate either the duration of the two encounters or the number of police officers present in the second encounter. Further, the Affidavit does not address whether any of the officers physically touched the defendant during the encounters. Also, the Affidavit does not state whether the officers were in uniform or possessed guns when they confronted the defendant.

Because there is insufficient evidence for the Court to decide whether the defendant was in custody at the time that he made the statements at issue, the Court directs that an evidentiary hearing be held before United States Magistrate Judge William D. Wall. The parties are directed to report to Judge Wall forthwith to set a date for the hearing.

## D. As to the Request for a Bill of Particulars

Rule 7 of the Federal Rules of Criminal Procedure provides that a district court "may direct the filing of a bill of particulars." Fed.R.Crim.P. 7(f). A bill of particulars enables a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [a] defendant to prepare for trial,

to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir.1987) (citations omitted). Acquisition of evidentiary detail is not the function of a bill of particular. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.1990). The decision to grant a motion for a bill of particulars is within the sound discretion of the district court. *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir.1984).

■ Here, the indictment sufficiently informs the defendant of the nature of the single charge pending against him, namely making a false statement to an officer on November 20, 2000, thereby enabling him to prepare a defense in this matter. Accordingly, the motion for a bill of particulars is denied.

### E. As to the Production of all Documents and Tangible Objects

The defendant moves for the production of documents pursuant to Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure. Rule 16 provides that:

> Upon request of the defendant the government shall permit the defendant to inspect and copy ... books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

Fed.R.Crim.P. 16(a)(1)(C). In its memorandum of law in opposition to the defendant's motion, the Government states that it will make available to the defendant all evidence consistent with Rule 16(a)(1)(C). By letter dated March 5, 2002, the Government provided counsel for the defendant with the material required under Rule 16. Accordingly, the defendant's motion under Rule 16(a)(1)(C) is denied as moot.

### F. As to the Production of All *Brady* Material

The defendant moves for the production of all *Brady* material. The Government responds that it is unaware of any *Brady* material and it is aware of the continuing obligation to make such disclosures. Accordingly, the statement by the Government is sufficient at this stage of the litigation.

### G. As to the Production of *Jencks* Act Material

The defendant moves for the production of all statements under Rule 26.2 of the Federal Rules of Criminal Procedure. Rule 26.2 provides that:

> After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the government or the defendant and the defendant's attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

Fed.R.Crim.P. 26.2(a). Although the defendant is not entitled to statements under Rule 26.2 until after the witness has testified on direct examination, the Government agrees only to provide such statements to the defendant in advance of the trial in this matter. Accordingly, the motion for all statements under Rule 26.2 is denied, except that the Government is requested to do so at least two weeks prior to the trial.

### H. As to the Statements of the Defendant Made after his Arrest

After the Court orally rendered its decision on the pre-trial motions, counsel for the defendant advised the Court that the Government recently produced statements that the defendant allegedly made to law enforcement officials after his arrest in Staten Island, New York. Counsel for the defendant requested that the hearing referred to Judge Wall also encompass the admissibility of these statements. The Court granted this request. Accordingly, the hearing before Judge Wall shall address the admissibility of the statements, allegedly made by the defendant after his arrest in Staten Island.

### III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED,** that the motion to inspect the grand jury minutes is **DENIED;** and it is further

**ORDERED,** that the motion to dismiss the indictment is **DENIED;** and it is further

**ORDERED,** that the defendant and the Government are directed to appear for an evidentiary hearing pursuant to 28 U.S.C. § 636(b)(1), on the issue of whether the defendant was in custody at the time that he made the statements that the Government intends to use, before United States Magistrate Judge William D. Wall; and it is further

**ORDERED,** that the hearing before Judge Wall shall address the admissibility of the statements, allegedly made by the defendant after his arrest in Staten Island; and it is further

**ORDERED,** that the motion for a bill of particulars is **DENIED;** and it is further

**ORDERED,** that the motion to produce documents under Rule 16(a)(1)(C) is **DENIED;** and it is further

**ORDERED,** that the motion to produce all *Brady* material is **DENIED,** except as above stated; and it is further

**ORDERED,** that the motion to produce all *Jencks* Act material is **DENIED,** as above stated.

**SO ORDERED.**