Matute v. Garland

BIA
Sagerman, IJ
A216 473 472

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of June, two thousand twenty-four.

PRESENT:
> **REENA RAGGI,**
> **DENNY CHIN,**
> **STEVEN J. MENASHI,**
> *Circuit Judges.*

---

**RAMON MATUTE,**
> *Petitioner,*

v.  22-6171

**MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,**
> *Respondent.*

---

FOR PETITIONER:  JOHN H. PENG (Karen L. Murtagh, Executive Director, *on the brief*), Prisoners' Legal Services of New York, Albany, NY.

**FOR RESPONDENT:**                STEPHANIE L. GROFF, Trial Attorney, Office of Immigration Litigation (Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, Jennifer P. Levings, Assistant Director, Office of Immigration Litigation, *on the brief*), United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a decision of the Board of Immigration Appeals ("BIA"), it is hereby ORDERED, ADJUDGED, and DECREED that the petition for review is DENIED.

Petitioner Ramon Matute seeks review of a decision of the BIA that affirmed the removal order of an Immigration Judge ("IJ") following the denial of Matute's motion to suppress an affidavit admitting his alienage. *In re Ramon Matute*, No. A-216-473-472 (B.I.A, Mar. 9, 2022), *aff'g* No. A-216-473-472 (Immigr. Ct. Napanoch Sept. 29, 2021).[1]  We assume the parties' familiarity with the underlying facts and procedural history.

**I**

"When the BIA issues an opinion, the opinion becomes the basis for judicial review of the decision of which the alien is complaining." *Bhagtana v. Garland*, 93 F.4th 592, 593 (2d Cir. 2023) (internal quotation marks omitted). And when, as in this case, "the decision of the BIA is consistent with the decision of the IJ, we may consider both decisions 'for the sake of completeness.'" *Singh v. Garland*, 11 F.4th 106, 112 (2d Cir. 2021) (quoting

---

[1] Matute does not challenge the agency's denial of his claim for protection under the Convention Against Torture.

*Wangchuck v. DHS*, 448 F.3d 524, 528 (2d Cir. 2006)). Because "Congress has specified that 'the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary,'" *id.* (quoting 8 U.S.C. § 1252(b)(4)(B)), we "review the agency's decision for substantial evidence and must defer to the factfinder's findings based on such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.* at 113 (internal quotation marks omitted). "By contrast, we review legal conclusions de novo." *Id.*[2]

## II

Matute argues that the agency erred in denying his motion to suppress an affidavit admitting his alienage. Matute signed the affidavit following an interview with an immigration officer while he was serving a five-year sentence at the Downstate Correctional Facility for a New York state robbery conviction.

The exclusionary rule does not apply in immigration proceedings unless "record evidence establishe[s] either (a) that an egregious violation that was fundamentally unfair ha[s] occurred, or (b) that the violation—regardless of its egregiousness or unfairness—undermined the reliability of the evidence in dispute." *Almeida-Amaral v.*

---

[2] Although our jurisdiction to review a final order of removal is limited when a petitioner, such as Matute, has committed a crime involving moral turpitude under 8 U.S.C. § 1182(a)(2), we retain threshold jurisdiction to determine whether the petitioner is in fact an alien. *See Bell v. Reno*, 218 F.3d 86, 89 (2d Cir. 2000). In addition, we have jurisdiction to consider constitutional claims and questions of law. *See* 8 U.S.C. § 1252(a)(2)(C), (D).

*Gonzales*, 461 F.3d 231, 235 (2d Cir. 2006). "If the documentary evidence that an applicant submits in support of h[is] motion *could* support a basis for excluding the evidence, then []he is entitled to an evidentiary hearing at which []he may attempt to establish a *prima facie* case for suppression and thereby shift the burden to the government to justify its actions." *Millan-Hernandez v. Barr*, 965 F.3d 140, 143 (2d Cir. 2020) (internal quotation marks and citations omitted). "In determining whether the petitioner has made out a *prima facie* case … the agency must view the evidence and facts alleged 'most favorably to petitioner.'" *Id.* at 146 (quoting *Almeida-Amaral*, 461 F.3d at 237). Matute argues that the alienage affidavit should have been suppressed because it was obtained through an egregious violation of his Fourth and Fifth Amendment rights and because it was unreliable. We conclude that the agency did not err in denying the motion to suppress without a hearing.

**A**

First, the agency correctly concluded that, even viewing the evidence in the light most favorable to Matute, it could not support a finding that his Fourth or Fifth Amendment rights were egregiously violated. There was no egregious Fourth Amendment violation because immigration officers are authorized by statute "without warrant … to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." 8 U.S.C. § 1357(a)(1). Nor did the state corrections officer egregiously violate Matute's Fourth Amendment rights by bringing him to the

4

immigration officer for questioning. Matute was already in prison, and the officer did not effect an unreasonable seizure by bringing Matute from one place in the prison to another. In any event, the agency correctly concluded that none of the factors that our court has identified "to guide the BIA in its assessment of the egregiousness of [a] Fourth Amendment violation" was present here. *Cotzojay v. Holder*, 725 F.3d 172, 182 (2d Cir. 2013) (stating that, in assessing the egregiousness of a purported violation, the agency may consider "whether the violation was intentional; whether the seizure was 'gross or unreasonable' and without plausible legal ground; whether the invasion involved 'threats, coercion, physical abuse' or 'unreasonable shows of force'; and whether the seizure or arrest was based on race or ethnicity") (alteration omitted) (quoting *Oliva-Ramos v. Att'y Gen. of U.S.*, 694 F.3d 259, 279 (3d Cir. 2012)).

While the *Cotzojay* factors are "non-exhaustive," *id.*, Matute failed to show that the alleged Fourth Amendment violation was otherwise egregious. He claims that he did not understand the immigration officer's questions because the interview was conducted in English and he spoke only Spanish. But the affidavit form provided a Spanish translation of each question, and Matute had an opportunity to review the written form after answering the questions; indeed, he initialed each page of the document. In addition, Matute's answers to the questions were responsive and relevant, indicating that he understood what was asked.

5

In considering a purportedly egregious Fourth Amendment violation in the immigration context, we have explained that "[s]omething egregious is by nature extreme, rare, and obvious." *Maldonado v. Holder*, 763 F.3d 155, 165 (2d Cir. 2014). Matute has not shown that questioning of state prisoners by immigration officers is a "rare" occurrence. Nor does such questioning appear to be an "extreme" or "obvious" violation of his rights given that, as the IJ noted, "[i]t is certainly well-established … that immigration officials can ask anyone regarding their immigration status." Cert. Admin. R. 57.

**B**

Second, Matute argues that the alienage affidavit should have been suppressed under the second prong of the *Almeida-Amaral* test because the alleged Fourth Amendment violation undermined its reliability. The government responds that Matute failed to raise this argument before the IJ. *See Prabhudial v. Holder*, 780 F.3d 553, 555 (2d Cir. 2015) ("[T]he BIA may refuse to consider an issue that could have been, but was not, raised before an IJ."). Even if the argument were properly raised, however, it would fail.

We have held that a Fourth Amendment violation does not affect the reliability of evidence establishing a straightforward fact such as a person's nationality. For that reason, "we have affirmed the denial of suppression motions on the basis that the evidence was nonetheless reliable" when "the evidence related to simple, specific, and objective facts, *e.g.*, whether a person is a foreign citizen or has a passport and valid visa."

6

*Singh v. Mukasey*, 553 F.3d 207, 216 (2d Cir. 2006). The objective fact of Matute's alienage is "not altered by coercive interrogation" because "a person either is or is not a citizen of a particular country and either does or does not have a visa." *Id.* Accordingly, as the BIA recognized, Matute's reliability argument would fail even if it were properly raised. *See* Cert. Admin. R. 4 ("The respondent's reliability argument also does not justify a remand of the record because the respondent has neither developed it on appeal nor made any offer of proof to substantiate it.").

**C**

Third, the agency did not err in rejecting Matute's argument that the affidavit should be suppressed because his Fifth Amendment rights were egregiously violated when the interviewing immigration officer failed to provide him with warnings against self-incrimination pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

*Miranda* warnings are required in situations of "custodial interrogation." *See United States v. Morales*, 834 F.2d 35, 38 (2d Cir. 1987); *Zuniga-Perez v. Sessions*, 897 F.3d 114, 123 (2d Cir. 2018) (acknowledging in the immigration context that, under some circumstances, "[s]tatements made during a custodial interrogation" should be excluded "unless a suspect has first been advised of his or her [*Miranda*] rights") (quoting *United States v. Faux*, 828 F.3d 130, 134 (2d Cir. 2016)). But we have held that "the solicitation of information concerning a person's identity and background does not amount to custodial interrogation prohibited by *Miranda*." *United States v. Adegbite*, 846 F.2d 834, 838-39 (2d

7

Cir. 1988); *see also United States v. Familetti*, 878 F.3d 53, 57 (2d Cir. 2017) ("[P]edigree questions that pertain to administration or a defendant's basic identification information do not trigger *Miranda*.") (internal quotation marks omitted).

In addition, we have held that *Miranda* warnings are not required when an immigration officer questions an alien incarcerated for a state crime "solely for the purpose of determining whether [the alien] would be subject to administrative deportation after his release." *United States v. Rodriguez*, 356 F.3d 254, 259 (2d Cir. 2004). Matute was interviewed while in state custody for a robbery conviction, and there is no basis in the record for inferring that the immigration officer's questions "were reasonably likely to elicit an incriminating response." *Familetti*, 878 F.3d at 57 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)). Indeed, the information obtained in the interview was never used in any criminal proceeding. Because no *Miranda* warnings were required, Matute failed to provide evidence that could support a finding that an egregious Fifth Amendment violation occurred.

\*       \*       \*

We have considered Matute's remaining arguments, which we conclude are without merit. For the foregoing reasons, the petition for review is denied.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8