UNITED STATES of America

v.

**Robert CASIANO, Defendant.**

**No. 93 Cr. 944 (AGS).**

United States District Court, S.D. New York.

Aug. 24, 1994.

Margery B. Feinzig, Asst. U.S. Atty., S.D.N.Y., U.S. Dept. of Justice, New York City, for U.S.

Paul Davison, Federal Defenders, S.D.N.Y., New York City, for defendant.

### ORDER

SCHWARTZ, District Judge:

Currently pending before the Court is defendant Robert Casiano's motion to suppress his post-arrest statement acknowledging ownership of a coat. We conducted a full evidentiary hearing on this issue on June 29, 1994. For the reasons set forth below, defendant's motion is denied.

### BACKGROUND

#### The Events of November 3, 1993

On November 3, 1993, agents of the Bureau of Alcohol, Tobacco and Firearms ("ATF"), including Special Agent Robert Cucinelli, along with New York City housing police officers, executed a search warrant for 54 West 174th Street, Apt. 5K, Bronx, New York.[1] During a security sweep of the apartment, the agents found Robert Casiano in a back room and Jose Vigo in the living room. Tr. 13, 31, 34. They arrested Casiano and Vigo, handcuffing them and seating them on chairs at a table in the hallway near the living room. Tr. 13, 32.

Agent Cucinelli then removed Vigo to the living room, read him his *Miranda* rights, and asked Vigo if he would cooperate in the investigation. Tr. 13–14. Vigo refused. Tr. 14. Agent Cucinelli informed Vigo that he would be transported to the police station, and, in light of the fact that it was a chilly November day and Vigo was wearing only shorts, asked Vigo if he had any clothes in the apartment. Tr. 14, 25, 50. Vigo replied that his bedroom was in the rear of the apartment, to which Agent Cucinelli responded that agents would take him there so he could change clothing. Tr. 14. When Vigo emerged from the bedroom, he wore sneakers, pants, and a sweater. *Id.*

Upon returning from Vigo's bedroom, Agent Cucinelli approached Casiano, searched him, and read him his *Miranda* rights. Tr. 14, 23, 29. He asked Casiano if he would cooperate by telling the agents where the guns and/or drugs were located. Tr. 14, 26, 27. Casiano declined to cooperate. Tr. 14, 27, 28. Agent Cucinelli testified that he had no description of Casiano's clothing prior to entering the apartment. Tr. 52. At the time of his arrest, Casiano was wearing pants, shoes, and a shirt. Tr. 31. Agent Cucinelli observed a coat lying on the floor next to Casiano's chair, about four feet away and "in a direct line or more or less a direct line from the entrance to the back room" where agents originally found Casiano. Tr. 33–34. Agent Cucinelli testified further that, in asking Casiano at that point whether the coat was his, the Agent's motivation was not to elicit incriminating information from Casiano, but rather to offer Casiano the opportunity to dress more appropriately for the cold weather outside given his imminent transport to the police station. Tr. 18, 50. Agent Cucinelli also testified that agents routinely offer defendants the opportunity to dress appropriately for the weather prior to transport. Tr. 50.

In response to Agent Cucinelli's question, Casiano said "[y]es, that's my coat." Tr. 14, 37. Agent Cucinelli picked up the coat, searched the pockets, and draped the coat over Casiano's shoulders. Tr. 14, 18, 47. Agent Cucinelli testified that such a search is

---

1. Tr. [page number] refers to the transcript of the June 29, 1994 suppression hearing.

standard procedure because an agent never never delivers to a defendant an article of clothing which might contain weapons or narcotics without first searching the garment. Tr. 18. In the pocket of the coat, Agent Cucinelli found two $20 bills, Tr. 25, which were identified to be pre-recorded money used in the narcotics transaction that preceded the execution of the search warrant. Tr. 14, 18, 25.

## DISCUSSION

 It is well-settled that not every question asked in a custodial setting constitutes "interrogation" such that *Miranda* warnings need be given. *See, e.g., United States v. Gonzalez–Mares,* 752 F.2d 1485, 1489 (9th Cir.1985). The Supreme Court has stated that "interrogation" for *Miranda* purposes encompasses "only words or actions on the part of police officers that they should have known were reasonably likely to produce an incriminating response." *Rhode Island v. Innis,* 446 U.S. 291, 302, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980). "The questions asked must have been both likely to elicit an incriminating response and to produce psychological pressures that will subject the individual to the 'will' of his examiner." *United States v. Morales,* 834 F.2d 35, 38 (2d Cir.1987); *see also, United States v. Cota,* 953 F.2d 753, 758 (2d Cir.1992) ("[o]nly questioning that reflects a measure of compulsion above and beyond that inherent in custody itself constitutes interrogation the fruits of which may be received only after *Miranda* warnings have been given"). In this Circuit, "[r]outine questions ... ordinarily innocent of any investigative purpose do not pose the dangers *Miranda* was designed to check." *United States v. Carmona,* 873 F.2d 569, 573 (2d Cir.1989) (citing *United States v. Gotchis,* 803 F.2d 74, 79 (2d Cir. 1986). Questions "normally attendant to arrest and custody" ordinarily do not constitute interrogation. *Gotchis,* 803 F.2d at 79. In analyzing whether the question asked by Agent Cucinelli was interrogative, we must consider the totality of the circumstances surrounding his actions. *Cota,* 953 F.2d at 758. "The subjective intent of the agent is relevant but not conclusive" and "the relationship of the question asked to the crime suspected is highly relevant." *Gonzalez–Mares,* 752 F.2d at 1489.

 Under the foregoing totality of the circumstances test, we cannot find that Agent Cucinelli's question regarding ownership of the coat constitutes "interrogation" under *Miranda* and its progeny. Initially, we note that Agent Cucinelli's actions with respect to Vigo are highly probative of his motivation in inquiring as to the coat located near Casiano. After reading Vigo his *Miranda* rights and requesting his cooperation, Agent Cucinelli asked Vigo, who was inappropriately dressed for the weather outside, whether he had any clothes he wished to change into before being taken outside. He followed precisely the same routine with Casiano. Thus, in a circumstance where no possibly incriminating evidence was available nearby (i.e., the interaction with Vigo), Agent Cucinelli behaved exactly in accord with the motivation to which he ascribed his questioning of Casiano regarding the coat. Agent Cucinelli's behavior, then, comports with his testimony regarding his subjective intent in posing the question.

Second, we must emphasize that merely because Casiano's answer to Agent Cucinelli's question ultimately provided incriminating information does not in itself render the question interrogative. *See, e.g., Carmona,* 873 F.2d at 573–74 (declining to suppress defendant's use of an alias in response to an officer's inquiry as to his name, even though defendant contended that the officer knew suspect's name and that he used aliases, because officer's inquiry was meant to gather ordinary administrative information); *Gotchis,* 803 F.2d at 79 (finding that defendant's statement that he had been unemployed for eight years, which ultimately proved incriminating insofar as it indicated intent to distribute drugs, was admissible because such information is in most instances innocent and useful in the booking and arraignment of defendants).

Finally, there is simply insufficient evidence that, based on the information Agent Cucinelli possessed at the time he posed the question, he should have known Casiano possessed a coat. As noted, he testified that he

was not at the premises prior to Casiano's arrival, did not have a physical description of Casiano prior to execution of the search warrant, and had been given no specific information that Casiano was wearing or possessed a coat. Tr. 52. Casiano suggests that because Agent Cucinelli's team, which consisted of a confidential informant ("CI") and an undercover agent ("UC"), would subsequently describe Casiano, and because the cold weather on November 3 would likely cause such description to include a coat, Agent Cucinelli "should have known that the coat was reasonably likely to dovetail with a physical description of the drug seller." Def.Br. at 3. This contention assumes speculation on the part of Agent Cucinelli that is simply not contemplated under the totality of the circumstances test we are compelled to employ here. First, it presumes that Agent Cucinelli knew at the time of the question that the UC saw Casiano enter the building, a presumption contradicted by Agent Cucinelli's testimony. Tr. 51. Second, Casiano's argument requires Agent Cucinelli to have speculated both as to who would later give him a description of Casiano (the UC or the CI) *and* whether that description would derive from a sighting which occurred before or after Casiano entered the building.

Nor is there any merit to Casiano's argument that Agent Cucinelli should have known that his question was reasonably likely to elicit an incriminating response because "a coat worn by the suspect during the transaction, which began outdoors in the cold weather, would surely seem a likely place to look for the marked money." Def.Br. at 3. This assertion ignores that Agent Cucinelli had no evidence that the transaction took place outdoors. Tr. 51. Nor did Agent Cucinelli have any reason to believe that Casiano wore a coat during the transaction, or even had a coat in his possession—the first time Agent Cucinelli encountered Casiano, in the apartment, Casiano was not wearing a coat. Tr. 31, 36, 51–53.

In sum, after thorough review of the record of the suppression hearing, and the submissions of counsel, we are persuaded that Agent Cucinelli's question was routine in nature, with the intention solely of preparing the defendant for transport in cold weather, and that Agent Cucinelli could not reasonably be expected to have known that his question was reasonably likely to elicit an incriminating response. Accordingly, defendant's motion to suppress his post-arrest statements is denied.

SO ORDERED.