## State of Vermont v. Raymond G. Blouin

[716 A.2d 826]

No. 97-053

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed June 26, 1998

*Robert L. Sand*, Department of State's Attorneys, Montpelier, for Plaintiff-Appellant.

*Robert Appel*, Defender General, and *Henry Hinton*, Appellate Attorney, Montpelier, for Defendant-Appellee.

**Amestoy, C.J.** The State brings this interlocutory appeal from a district court order excluding evidence in a prosecution for driving under the influence, third offense, in violation of 23 V.S.A. § 1201(a)(2). The court excluded evidence of (1) defendant's refusal to

perform a roadside sobriety test, and (2) defendant's response to the question of whether he had "burped, belched or vomited" during the fifteen minutes prior to administration of an evidentiary breath test. The State contends that no constitutional, statutory or other rule of law requires exclusion of the evidence. We agree and therefore reverse.

In September of 1995, after observing a vehicle being driven with a burned out headlight, a Vermont State Police trooper effected a stop of defendant's vehicle, then approached on foot. The trooper detected the odor of alcohol emanating from defendant's car, noticed that his eyes were watery and bloodshot, that his speech was slurred, and that a twelve-pack of beer and several empty containers lay on the passenger side floor. The trooper asked if he had been drinking, to which defendant responded, "[y]es, a couple of beers." The trooper then asked defendant to step out of the car and perform a horizontal gaze nystagmus ("HGN") test.[1] As the trooper later testified, defendant "wouldn't follow the pen with his eyes, he kept moving his head, so I was unable to do that test." Following this refusal to perform the HGN test, the trooper requested no further physical performance tests. The trooper then administered an Alcosensor test, results of which indicated alcohol in defendant's system. Defendant was then taken to police barracks, placed in a processing room and then advised of his rights according to the standard Vermont State Police "DUI Processing Form." As part of processing, defendant was advised of his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). He indicated his understanding of those rights and that he did not wish to answer any further questions.

The trooper continued processing by explaining defendant's implied consent rights under 23 V.S.A. § 1202 et seq. Defendant waived the opportunity to consult with counsel and agreed to perform an evidentiary breath test. As part of administering the breath test, the trooper inquired whether defendant had "burped, belched or vomited within the last fifteen minutes." The purpose of the question is to ensure that trace amounts of alcohol are not in the mouth which could render an inaccurate test result. According to the trooper, defendant

---

[1] The HGN test involves moving an object such as a pen across the subject's field of vision to observe the manner in which the subject's eyes follow the object. As the subject follows the object, an overabundance of eye twitching indicates possible intoxication. See 1 R. Erwin, Defense of Drunk Driving Cases § 10.04[5], at 10-18— 10-19 (1997).

initially said he had just burped, but then corrected himself and stated that he had "burped in the cruiser fifteen minutes ago."

Defendant then performed an evidentiary breath test, which revealed a blood-alcohol content in excess of the legal limit. After the State brought DUI charges, defendant moved to exclude evidence of his refusal to perform the HGN test, as well as the "burp question" and defendant's subsequent reply. The trial court excluded the challenged evidence, and granted the State permission to take interlocutory appeal. See V.R.A.P. 5(b); 13 V.S.A. § 7403.

## I.

The State first argues that the district court improperly excluded evidence of defendant's refusal to perform the HGN test. The State contends that a motorist's refusal to perform a roadside sobriety test is relevant evidence in a DUI prosecution, and that no constitutional, statutory or other rule of law exists to render the evidence inadmissible. The district court, on the other hand, determined that "a trial court may not admit evidence of a refusal to comply with an officer's request if the accused had a right to so refuse." (Citing *State v. Hedding*, 122 Vt. 379, 382, 172 A.2d 599, 601 (1961)). Defendant argues that the district court's ruling is correct because defendant "had the natural and inherent right to refuse" performance of the HGN test, and that using the refusal evidence against him would be "fundamentally unfair." We disagree.

Relevant evidence is admissible, except as limited by state or federal constitution, statute, rule of evidence, or other principle of law. See V.R.E. 402. In this case, defendant concedes that he refused to perform the HGN test. Evidence that a motorist refused to perform a sobriety test is probative of guilt, and therefore relevant. See *State v. Curavoo*, 156 Vt. 72, 75, 587 A.2d 963, 964-65 (1991) ("There being no statutory ground for refusal to submit to field dexterity tests, 'there is no reason not to consider refusal as evidence of consciousness of guilt.'") (quoting *State v. Hoenscheid*, 374 N.W.2d 128, 132 (S.D. 1985)). Inasmuch as defendant's refusal is relevant, the issue is whether there exists any rule of law which would require exclusion.

As an initial matter, we find unavailing defendant's argument that introduction of his refusal to perform the HGN test violates his privilege against self-incrimination. The HGN test elicits a person's physical, rather than testimonial, response, and therefore does not trigger the privilege against self-incrimination. See *Pennsylvania v. Muniz*, 496 U.S. 582, 602 (1990) (request to perform HGN test elicits

"physical" rather than "testimonial" evidence and thus does not violate privilege against self-incrimination); *South Dakota v. Neville*, 459 U.S. 553, 564 (1983) (refusal to take blood-alcohol test, after police lawfully requested it, is not an act coerced by officer, and thus is not protected by privilege against self-incrimination); *State v. Brean*, 136 Vt. 147, 151, 385 A.2d 1085, 1088 (1978) (evidence of refusal to perform blood-alcohol test not violative of federal or state privilege against self-incrimination).

Nor do we find any statute or other rule of law which would require exclusion of the refusal evidence. Defendant contends that the structure of the implied consent statute shows legislative intent to exclude evidence that a motorist refused to perform roadside sobriety tests such as the HGN. He bases this argument on the statute's specific provision that "[i]f the [motorist] refuses to submit to an evidentiary [breath] test . . . the refusal may be introduced as evidence in a criminal proceeding." 23 V.S.A. § 1202(b). In contrast, the statute does not specifically provide for admission of evidence of a motorist's refusal to perform the HGN or other physical sobriety tests. He cites the principle of expressio unius est exclusio alterius to suggest legislative intent to exclude evidence of refusal to perform the HGN. We find this argument without merit.

The statute creates a detailed scheme under which motorists in Vermont give "implied consent" to provide an evidentiary breath sample for testing. See *id.* § 1202(a). The statute grants the motorist the right to refuse the test, see *id.* § 1202(b), but explicitly sets forth consequences that follow a refusal, see *id.* (refusal introduced in criminal proceeding); *id.* § 1202(d)(2) (license suspended); *id.* § 1202(d)(6) (if previously convicted, motorist subject to prosecution for "criminal refusal"). In light of the statute's overall context, it is understandable why the Legislature would specify the admissibility of refusing the breath test.

■ On the other hand, the statute is silent with respect to physical sobriety tests such as the HGN. Defendant and the State agree that the police have a right to request performance of physical sobriety tests such as the HGN, and that defendant has a right to refuse performance of the test. We find that to be the correct position in light of the legitimate nature of the requested physical tests. For the same reason, inasmuch as defendant's refusal to perform the HGN test goes to consciousness of guilt, see *Curavoo*, 156 Vt. at 75, 587 A.2d at 965, the refusal evidence is admissible. In the absence of statutory language prohibiting introduction of the refusal evidence,

we will not invent it. See *State v. Brooks*, 162 Vt. 26, 29, 643 A.2d 226, 228 (1993).

For the same reason, *Hedding, supra,* may be distinguished. *Hedding* involved construction of an earlier version of the implied consent statute. When that case was decided, the statute provided that the motorist could refuse an evidentiary breath test, and that refusal would lead to license suspension. The statute was silent, however, on whether the refusal was admissible at trial. Given the other consequences of refusal articulated in the statute, the *Hedding* Court inferred legislative intent that the refusal be excluded. See 122 Vt. at 382, 172 A.2d at 601. The Court stated: "'The fact that a defendant did what he had an absolute right to do cannot be used to create any unfavorable inference against him.'" *Id.* (quoting *People v. Stratton,* 143 N.Y.S.2d 362, 365 (App. Div. 1955)). The holding in *Hedding* is "no longer viable" due to the change in statutory language. *Brean,* 136 Vt. at 152, 385 A.2d at 1088.

Defendant's final argument on this issue is that, even if no rule of law expressly requires exclusion of the refusal evidence, the refusal is only weakly probative of guilt and may be excluded under V.R.E. 403. We need not address this contention because the district court excluded the evidence as a matter of law without considering its probative value. At trial the court should address the refusal's probative value under the rules of evidence.

## II.

The State's second argument is that the district court erroneously excluded defendant's answer to the "burp question." Because the burp question is a means of bolstering the accuracy of the test, both the district court and the defendant characterize it as a question designed to elicit an incriminating response from the defendant. See *Muniz,* 496 U.S. at 602 n.14 ("[w]ithout obtaining a waiver of the suspect's *Miranda* rights, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions.") (citations omitted). The State, on the other hand, contends that the burp question is used only to ensure accurate breath test results.

An individual in police custody may not be compelled to give "testimonial" evidence. See *Schmerber v. California,* 384 U.S. 757, 761 (1966). Police are not required, however, to refrain from taking "real or physical evidence" that relates to possible criminal activity. *Id.* at 764. We have held before that an evidentiary breath test is not

testimonial in nature, but rather is physical, and thus may be administered even after a defendant has invoked *Miranda* rights. See *State v. Bassett*, 128 Vt. 453, 266 A.2d 438 (1970).

In *Muniz*, 496 U.S. at 603-04, the United States Supreme Court upheld the introduction of responses to "limited and carefully worded inquiries" as to whether a motorist understood instructions to a physical sobriety test, even after that individual was in custody and entitled to *Miranda* warnings.[2] The Court reasoned that the inquiries were "necessarily 'attendant to' the police procedure," and were "not elicited in response to custodial interrogation." *Id.* We find the burp question analogous to the inquiry at issue in *Muniz*.

The "interrogation" of which defendant complains came not in the course of "custodial interrogation" as that phrase has been defined by the United States Supreme Court, see *Muniz*, 496 U.S. at 603 (custodial interrogation did not include limited and carefully worded inquiries necessarily "attendant to" legitimate police procedure), but instead during the phase of proceedings in which defendant was asked — and agreed — to provide a breath sample. In the context of an arrest for driving while intoxicated, a police inquiry into whether the suspect will perform an evidentiary blood-alcohol test "is not an interrogation within the meaning of *Miranda.*" *Neville*, 459 U.S. at 564 n.15.

█ Nor are we persuaded that the burp question was devised to elicit incriminating responses to be used against the defendant in court. Defendant consented to the administration of a breath test. The burp question is designed to help assure the accuracy of the test — an objective as significant to the suspect as to the State. In and of itself, there is nothing incriminating about defendant's response: if defendant had answered yes to the question, the officer would have merely waited another fifteen minutes to obtain accurate test results. In short, the burp question is not interrogation. See *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (term "interrogation" under *Miranda* refers to "express questioning . . . [and] words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an

---

[2] The dissent attempts to distinguish *Muniz* from the instant case by characterizing the incriminating utterances in *Muniz* as "voluntary." They were voluntary only "in the sense that they were not elicited in response to custodial interrogation," but instead came in response to "the limited and focused inquiries" necessarily "'attendant to'" legitimate police procedure. *Muniz*, 496 U.S. at 603-05. That is precisely the status of defendant's answer to the burp question.

incriminating response from the suspect"). The district court erred in excluding the burp question and answer.

*Reversed and remanded.*

**Skoglund, J.,** dissenting. The Court is called upon to decide whether a defendant's Fifth Amendment rights as described in *Miranda v. Arizona*, 384 U.S. 436 (1966), were violated when he was in custody, had indicated his desire to not answer questions, and was asked, prior to the administration of an evidentiary breath test, if he had burped. I believe the question is purely investigative and aimed at obtaining a testimonial response that will assist in proving the element of intoxication and, coming as it did after the defendant had invoked his right to remain silent, it violated his Fifth Amendment right against self-incrimination. Therefore, his answer should be suppressed.

As the majority notes, the Self-Incrimination Clause of the Fifth Amendment is not necessarily implicated every time a person suspected of criminal activity is compelled in some way to cooperate in generating evidence that later may be used against him. The privilege only protects the accused from being compelled to provide evidence that is testimonial or communicative in nature. See *Schmerber v. California*, 384 U.S. 757, 761 (1966). To be testimonial, an accused's communication must, "explicitly or implicitly, relate a factual assertion or disclose information." *Doe v. United States*, 487 U.S. 201, 210 (1988).

The privilege, however, does not protect a suspect from being compelled by the State to produce "real or physical evidence." *Schmerber*, 384 U.S. at 764.[1] There are other exceptions to the privilege. In addition to a "routine booking question" exception to the *Miranda* rules,[2] as set forth in *Pennsylvania v. Muniz*, carefully scripted inquiries or instructions on how to perform field sobriety tests do not violate a suspect's Fifth Amendment rights when they are

---

[1] While a suspect can be required to provide real or physical evidence, such evidence must be obtained in a manner that does not entail any testimonial act on the part of the suspect. In *Schmerber v. California*, for example, the Court held that the police could compel a suspect to provide a blood sample because the compulsion was outside of the Fifth Amendment's protection: "Not even a shadow of testimonial compulsion upon or enforced communication by the accused was involved either in the extraction or in the chemical analysis." 384 U.S. 757, 765 (1966).

[2] Examples of permissible routine booking questions include questions regarding an arrestee's name, address, height, weight, eye color, date of birth, and current age. See *Pennsylvania v. Muniz*, 496 U.S. 582, 601-02 (1990).

not designed to elicit incriminating evidence, and are "attendant to" an established police procedure. 496 U.S. 582, 603-04 (1990). For example, when an officer reads the carefully scripted instructions on Vermont's implied consent law to an arrestee, the instructions do not constitute "interrogation" and the simple inquiry, "do you understand these instructions?," does not call for an incriminating response.

I disagree, however, with the majority holding that the "burp" question is in the nature of limited and carefully scripted instructions to the accused concerning the taking of a breath test. While the majority finds the question to be a legitimate component of an evidentiary breath test, intended "to protect against an erroneous result," I believe the interrogatory is designed to bolster the quality of evidence against the suspect and, thus, calls for an incriminating response.[3]

The holding of *Muniz* does not support the majority's treatment of the "burp" question. The incriminating utterances defendant sought to suppress in *Muniz*, made during the physical sobriety tests, were voluntary and not elicited in response to questions from the processing officer. Muniz's statements were non sequiturs; they were not responsive to the instructions being given.[4] Therefore, the Court found that the absence of *Miranda* warnings did not require suppression of the statements. See *Muniz*, 496 U.S. at 604-05. In contrast, the response defendant seeks to suppress, in the present case, was compelled by a direct question, "Did you burp?" His answer was not a spontaneous, voluntary statement.

When analyzing whether a question asked by a law enforcement officer is interrogative, courts have considered the totality of the circumstances surrounding the officer's actions. In *United States v. Casiano*, the court reasoned that while "'[t]he subjective intent of the agent is relevant but not conclusive,'" "'the relationship of the question asked to the crime suspected is highly relevant'" in making

---

[3] By incriminating response, I "refer to any response — whether inculpatory or exculpatory — that the *prosecution* may seek to introduce at trial." *Muniz*, 496 U.S. at 615 (Marshall, J., concurring). For purposes of exclusion, the court may draw "'no distinction . . . between inculpatory statements and statements alleged to be merely "exculpatory."'" *Id.* (quoting *Miranda v. Arizona*, 384 U.S. 436, 476-77 (1966)).

[4] At Muniz's trial in the Pennsylvania Superior Court, evidence was adduced showing that during the course of the three sobriety tests, Muniz attempted to explain his difficulties in performing the various tasks and often asked for further clarification of the tasks he was to perform. During the explanation of the implied consent law, he made several inquiries about the legal implications of the law and said he'd recently finished a license suspension and did not want his license suspended again. See *Pennsylvania v. Muniz*, 547 A.2d 419, 423 (Pa. Super. Ct. 1988).

such a determination. 862 F. Supp. 52, 54 (S.D.N.Y. 1994) (quoting *United States v. Gonzalez-Mares*, 752 F.2d 1485, 1489 (9th Cir. 1985)); see also *State v. Walton*, 824 P.2d 533, 535 (Wash. Ct. App. 1992). Thus, when the question posed has relevance to the suspected crime, seemingly innocuous questions may constitute custodial interrogation, and courts have suppressed both questions and answers when *Miranda* warnings were lacking or where invocation of the Fifth Amendment right was not honored by law enforcement.

For example, in *State v. Wiberg*, 296 N.W.2d 388 (Minn. 1980), police came to a woman's home to search for 550 stolen firearms. *Miranda* warnings were given and the woman indicated, in the presence of the questioning officer, that she wished to remain silent. Disregarding her invocation, the officer picked up a purse and asked her if it was her purse. See *id.* at 390. She admitted that it was. In the purse was found a pistol and some gun literature. Her response was admitted at trial over her objection. On appeal, the court found the officer's question violated defendant's constitutional rights and, as a result, it was error for the trial court to admit evidence of her response to the question of ownership. See *id.* at 391; see also *People v. Mack*, 895 P.2d 530 (Colo. 1995) (in prosecution for unlawful distribution and sale of cocaine, question — "Is this your key" — which referred to a hotel room key and posed to suspect believed to be dealing drugs from same hotel room, was custodial interrogation without benefit of *Miranda* warning, and suspect's answer to question was suppressed); *Commonwealth v. Woods*, 645 N.E.2d 1153, 1157 (Mass. 1995) (noting that *Miranda* warning is required before asking defendant about employment status in a drug case where defendant's statement that he is unemployed may prove incriminating because defendant possessed substantial amount of cash at time of arrest); *State v. Stevens*, 511 N.W.2d 591, 599 (Wis. 1994).

In *State v. Chihanski*, 540 N.W.2d 621 (N.D. 1995), defendant in a drunk driving case argued that the trial court erred when it denied her motion to suppress a statement made without benefit of *Miranda* warnings. Prior to taking a breath test, defendant was asked have you put "anything in [your] mouth since the time of arrest," to which she responded "no." *Id.* at 623. The court found that substantial evidence existed, without Chihanski's statement, to support the officer's determination that she had not eaten, drunk, or smoked for twenty minutes before taking the breath test. See *id.* at 624. Thus, the court held that even if the statement was testimonial, requiring *Miranda* warnings, admitting it in the absence of the warnings was harmless error. See *id.*

In this case, defendant was given *Miranda* warnings — he was told that he had a right to remain silent. He indicated that he did not want to answer questions and, therefore, exercised his right to cut off questioning. See *Miranda*, 384 U.S. at 474 When a defendant exercises this right, the police must scrupulously honor such a request. See *Michigan v. Mosley*, 423 U.S. 96, 103 (1975) ("A reasonable and faithful interpretation of the *Miranda* opinion must rest on the intention of the Court in that case to adopt 'fully effective means . . . to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored . . . .'") (quoting *Miranda*, 384 U.S. at 479). In this case, as in the cases cited above, defendant's attempt to cut off questioning was not scrupulously honored.

When a law enforcement officer asks a defendant the "burp" question during processing for DUI, the officer has already determined that there was probable cause to believe the defendant was intoxicated while operating a motor vehicle — through observation of erratic operation of the vehicle; through the detection of the odor of intoxicants, bloodshot or watery eyes, or slurred speech; from results of an alco-sensor; or from a suspect's spontaneous utterances. The question — "did you burp?" — is not a preamble to a lesson in manners. When the question is asked, the officer is beyond the initial determination that a crime has been committed and is in the process of capturing evidence to use against the defendant in a criminal prosecution.

The "burp" question that was posed to defendant came after a preliminary investigation, after arrest, after defendant invoked his Fifth Amendment right of silence, and without any subsequent express waiver of that right. The question was directly related to the charge confronting defendant. The question was not "innocent of any investigative purpose." *United States v. Gotchis*, 803 F.2d 74, 79 (2d Cir. 1986). By answering that he had not burped in the fifteen minutes preceding the breath sample, defendant communicated an assertion of fact which contributes to the evidentiary foundation of the State's case against him. His answer discloses information that "could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 445 (1972). In other words, he was asked, in violation of his constitutional right,

for information to assist in developing credible evidence intended to be used against him to establish his degree of intoxication.[5]

While it may increase the observational responsibilities of the processing officer, the State must "'shoulder the entire load'" in establishing the reliability of the evidence test to be used against a defendant. *Miranda*, 384 U.S. at 460 (quoting 8 J. Wigmore, Evidence § 2251, at 317 (McNaughton rev. 1961)). The defendant should not be compelled to provide testimonial evidence that the test results were uncontaminated.

Therefore, while I agree with the majority's conclusion that introduction of defendant's de facto refusal to perform the HGN test does not violate his constitutional rights, I would affirm the trial court's suppression of the "burp" question.

---

[5] Because it is not the defendant's burden to prove his innocence, I am not persuaded by the majority's conclusion that the accuracy of the statutorily required breath test is an objective, which is as significant to the suspect as it is to the State.