COURT OF APPEALS OF VIRGINIA

Present:   Judges Haley, Petty and Powell
Argued at Salem, Virginia


RAY ANTHONY GIBSON

                                                        OPINION BY
v.        Record No. 2847-09-3               JUDGE CLEO E. POWELL
                                                        MARCH 22, 2011

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
James V. Lane, Judge

W. Andrew Harding (Eldridge, Elledge, Evans & Harding, PLC,
on brief), for appellant.

Kathleen B. Martin, Senior Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General, on brief), for
appellee.


Ray Anthony Gibson ("Gibson") appeals his conviction for driving under the influence,

third offense, in violation of Code § 18.2-266.  Gibson contends that the trial court erred in

denying his motion to suppress testimony regarding his field sobriety tests.  For the reasons that

follow, we affirm the decision of the trial court.

BACKGROUND

In reviewing the denial of a motion to suppress, we view the evidence in the light most

favorable to the prevailing party below, in this case the Commonwealth, granting to it all

reasonable inferences fairly deducible therefrom.  See Commonwealth v. Grimstead, 12

Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  So viewed, the evidence demonstrates that, on

December 19, 2008, Officer Aaron Will initiated a traffic stop on a vehicle driven by Gibson.

After obtaining Gibson's identification, Officer Will determined that Gibson's license had been

revoked for being a habitual offender.  As a result, Officer Will arrested Gibson and placed him

in the back of his patrol car.  Officer Will then sat in the front seat of his patrol car and began to fill out the paperwork necessary to have Gibson's vehicle towed.

While filling out the paperwork, Officer Will detected the odor of alcohol coming from the backseat where Gibson was seated.  Officer Will asked Gibson if he had been drinking, to which Gibson responded that he had consumed three beers.

Suspecting that Gibson had been driving under the influence of alcohol, Officer Will had Gibson exit the vehicle to perform field sobriety tests.  Prior to administering the field sobriety tests, Officer Will asked Gibson whether he had any physical problems.  In response, Gibson informed Officer Will that he had a problem with his right knee.

Officer Will administered three tests:  a horizontal gaze nystagmus test, a one-legged stand test, and a nine-step walk and turn test.  Before the one-legged stand test, Officer Will advised Gibson that, in light of his right knee problem, Gibson could choose which leg he used to perform that sub-test.  According to Officer Will, Gibson was unable to successfully perform any of the tests.

Officer Will then offered Gibson the opportunity to take a preliminary breath test, which Gibson accepted.  Based on his observations, Officer Will transported Gibson to jail, where Officer Will administered a breath test.  The test indicated that Gibson had a blood alcohol content of .17.

Gibson was subsequently charged with driving after his license had been revoked and driving under the influence of alcohol, third offense.  Prior to trial, Gibson moved to suppress any statements he made and the field sobriety tests on the grounds that he was not read his Miranda warnings after he was initially arrested for driving after his license had been revoked.[1]

_____

[1] Gibson further argued that the suppression of the statements and the field sobriety tests would necessarily require suppression of the breath tests as the field sobriety tests provided the probable cause justifying the implied consent to administer the breath test.

On July 29, 2009, the trial court heard the suppression motion in conjunction with the Commonwealth's evidence. After hearing the evidence, the trial court granted Gibson's motion to suppress with regard to any statements Gibson made regarding consumption of alcohol while he was in custody,[2] but denied the motion with respect to the field sobriety tests. Gibson was then found guilty of driving after his license had been revoked and driving under the influence of alcohol, third offense.

Gibson appeals.

ANALYSIS

As always, "[t]he defendant bears the burden of establishing that the denial of his suppression motion was reversible error." Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913 (2008). Here, Gibson argues that the trial court erred in admitting testimony about the field sobriety tests into evidence. According to Gibson, parts of the field sobriety tests constitute interrogation, namely the question used to validate the tests (i.e., whether Gibson had any physical problems), therefore the field sobriety tests as a whole are testimonial. As such, he contends that any testimony about the field sobriety tests should be excluded as a result of Officer Will's failure to read Gibson the necessary Miranda warnings prior to initiating the field sobriety tests. We disagree.

The Fifth Amendment to the United States Constitution guarantees that no "person . . . shall be compelled in any criminal case to be a witness against himself." In Miranda v. Arizona, 384 U.S. 436, 478-79 (1966), the United States Supreme Court extended the Fifth Amendment privilege against self-incrimination to individuals subjected to custodial interrogation by the police.

---

[2] Specifically, the trial court stated "as far as any incriminating statements once he is in custody, I do think that [Gibson's] argument is correct."

- 3 -

> Under Miranda, before a suspect in police custody may be
> questioned by law enforcement officers, the suspect must be
> warned that he has a right to remain silent, that any statement he
> makes may be used as evidence against him, and that he has a right
> to have an attorney, either retained or appointed, present to assist
> him.

Dixon v. Commonwealth, 270 Va. 34, 39, 613 S.E.2d 398, 400 (2005).  Failure to give Miranda warnings prior to a custodial interrogation violates the accused's rights under the Fifth Amendment; therefore, "[s]tatements obtained by law enforcement officers in violation of [the Miranda] rule generally will be subject to exclusion for most proof purposes in a criminal trial." Id.

There are, however, limits to the protections offered by the Fifth Amendment.  Notably, the right against self-incrimination "applies *only* when the accused is compelled [1] to make a testimonial communication [2] that is incriminating."  Fisher v. United States, 425 U.S. 391, 408 (1976) (emphasis added).  For a communication to be considered testimonial, the speaker (or actor) must "reveal, directly or indirectly, his knowledge of facts relating him to the offense or . . . share his thoughts and beliefs with the Government."  Doe v. United States, 487 U.S. 201, 213 (1988).  Generally, a "testimonial communication" involves a verbal or written statement, but it may also include acts.  See id. at 209 (holding that nonverbal conduct contains a testimonial component whenever the conduct communicates the actor's thoughts or beliefs to another).

A compelled act "which makes a suspect or accused the source of 'real or physical evidence'" is not generally considered a testimonial communication.  Schmerber v. California, 384 U.S. 757, 764 (1966).  "[C]ompelling the accused merely to exhibit his person for observation . . . prior to trial involves no compulsion of the accused to give evidence having testimonial significance."  United States v. Wade, 388 U.S. 218, 223 (1967).  Rather, it is merely "compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any

- 4 -

knowledge he might have." Id. This removes from the Fifth Amendment's protection a multitude of compelled acts that, while leading to the discovery of incriminating evidence, do not themselves make an incriminating factual assertion.[3] For example, the Fifth Amendment "offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." Schmerber, 384 U.S. at 764. Similarly, we have held that a compelled breath test, like other compelled acts, does not violate the Fourth or Fifth Amendments because, as with blood, the alcohol content in a person's breath is not testimonial. Rowley v. Commonwealth, 48 Va. App. 181, 184, 629 S.E.2d 188, 190 (2006) (citing Schmerber, 384 U.S. at 765).

In the present case, neither the physical components of the field sobriety tests nor Gibson's inability to perform them constitute a testimonial communication. None of the three tests compelled Gibson to reveal his knowledge, thoughts, or beliefs; rather, they only required him to exhibit certain physical characteristics. Indeed, we note that both the one-legged stand component and the nine-step walk and turn component are synonymous with assuming a stance and walking, actions the Supreme Court has specifically recognized as non-testimonial communications. See Schmerber, 384 U.S. at 764. Moreover, the majority of the states that have addressed this issue have ruled similarly. See, e.g., State v. Devlin, 980 P.2d 1037 (Mont. 1999); State v. Whelan, 728 So. 2d 807 (Fl. Dist. Ct. App. 1999); State v. Nielsen, 936 P.2d 374

---

[3] Likewise, the refusal to perform tests that do not themselves constitute communicative or testimonial evidence is equally non-communicative and non-testimonial and therefore no constitutional violation occurs when the fact of a refusal is admitted into evidence. See South Dakota v. Neville, 459 U.S. 553, 564 (1983); Rowley v. Commonwealth, 48 Va. App. 181, 185-86, 629 S.E.2d 188, 190-91 (2006); Farmer v. Commonwealth, 12 Va. App. 337, 341, 404 S.E.2d 371, 373 (1991) (en banc).

- 5 -

(Or. Ct. App. 1997); <u>State v. Theriault</u>, 696 P.2d 718 (Ariz. Ct. App. 1984); <u>Commonwealth v. Brennan</u>, 438 N.E.2d 60 (Mass. 1982); <u>People v. Ramirez</u>, 609 P.2d 616 (Colo. 1980).

Gibson further argues that Officer Will's question regarding whether he had any physical problems was a custodial interrogation designed to validate the field sobriety test and, as such, his response, that he had a problem with his right knee, should have been suppressed along with the physical components of the field sobriety tests.[4]  We disagree.

The Supreme Court has defined interrogation for <u>Miranda</u> purposes as pertaining to "express questioning" as well as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300 (1980).  In <u>Pennsylvania v. Muniz</u>, 496 U.S. 582 (1990), the Supreme Court recognized two exceptions to this definition of interrogation.  The first is the "'routine booking question' exception which exempts from <u>Miranda</u>'s coverage questions to secure the 'biographical data necessary to complete booking or pretrial services.'"  <u>Id.</u> at 601 (citations omitted).  The second exception applies to inquiries "necessarily 'attendant to' [a legitimate] police procedure."  <u>Id.</u> at 603-04.  In <u>Muniz</u>, the Supreme Court specifically applied the second exception to police inquiries into whether a suspect understood instructions on how to perform a field sobriety test.

The "physical problems" question is sufficiently analogous to asking whether Gibson understood Officer Will's instructions as to how each test is to be performed.  Both questions are clearly meant to assure the validity of the test and not to elicit an incriminatory response.  <u>See</u> <u>id.</u>

---

[4] The Commonwealth argues that this portion of Gibson's argument was not made to the trial court and is therefore waived. <u>See</u> Rule 5A:18. We find that the objection made at trial was sufficient to put this issue before the trial court to the extent that the question at issue was a component of the field sobriety test.

At least one state has similarly recognized that inquiries intended to assure the validity of a legitimate police procedure fall under the "necessarily attendant to a legitimate police procedure" exception. In State v. Blouin, 716 A.2d 826, 830 (Vt. 1998), the Supreme Court of Vermont examined whether a question designed to assure the accuracy of a breath test[5] was "designed to elicit an incriminating response from the defendant" and was therefore a custodial interrogation.[6] The court held that the question was not an interrogation, stating:

> In Muniz, 496 U.S. at 603-04, the United States Supreme Court upheld the introduction of responses to "limited and carefully worded inquiries" as to whether a motorist understood instructions to a physical sobriety test, even after that individual was in custody and entitled to Miranda warnings. The Court reasoned that the inquiries were "necessarily 'attendant to' the police procedure," and were "not elicited in response to custodial interrogation." Id. We find the [inquiry at issue] analogous to the inquiry at issue in Muniz.
>
>     *    *    *    *    *    *    *
>
> Defendant consented to the administration of a breath test. The [inquiry at issue] is designed to help assure the accuracy of the test -- an objective as significant to the suspect as to the State. In and of itself, there is nothing incriminating about defendant's response: if defendant had answered yes to the question, the officer would have merely waited another fifteen minutes to obtain accurate test results. In short, the [inquiry at issue] is not interrogation.

Id. at 829-30.

_____

[5] In Blouin, prior to administering the breath test, the trooper asked the defendant whether he had "'burped, belched or vomited within the last fifteen minutes.' The purpose of the question is to ensure that trace amounts of alcohol are not in the mouth which could render an inaccurate test result." Id. at 827. The defendant initially replied that he had just burped, but corrected himself and said it was more than fifteen minutes ago. Id.

[6] We recognize that, unlike the present case, where Gibson was never given his Miranda warnings, the defendant in Blouin was read his Miranda warnings and invoked his right to remain silent before being asked the question at issue. Blouin, 716 A.2d at 827. Such a difference is without distinction, as the issue in both cases is the same: whether the officer's question amounted to a custodial interrogation in violation of the defendant's Fifth Amendment right against self-incrimination.

We find the analysis of the Supreme Court of Vermont persuasive. It is axiomatic that assuring the accuracy of the field sobriety test is just as significant to Gibson as it is to the Commonwealth. See id. at 830. Indeed, had Officer Will not asked the question, there was the potential that Gibson would have attempted to perform the one-legged stand on his injured leg, increasing his chances of failing the test. We further note that, in and of itself, there was nothing incriminating in Gibson's response to the question.[7] As with the list of compelled acts referred to in Schmerber, while the statement might lead to the discovery of incriminatory evidence, the statement itself does not make an incriminating factual assertion. Schmerber, 384 U.S. at 764. The fact that Gibson has a bad right knee had no direct bearing on his prosecution for driving under the influence, third offense. As such, there was no violation of Gibson's right against self-incrimination.

CONCLUSION

Officer Will's failure to read Gibson his Miranda warnings prior to administering the field sobriety tests did not require the suppression of the results of the field sobriety tests. As none of the physical components of the field sobriety tests involved testimonial communication, Gibson's physical performance during the field sobriety tests was not protected by the Fifth Amendment. Similarly, Officer Will's question about whether Gibson had any physical problems, and Gibson's response thereto, were necessarily attendant to a legitimate police procedure: administering the field sobriety tests. The question was designed to assure the

---

[7] In Muniz, the Supreme Court noted that requiring the accused to count out loud while performing the one-legged stand test and the walk and turn test *may* turn a field sobriety test into a custodial interrogation. Muniz, 496 U.S. at 603. In that situation, the question becomes whether the compelled communication was incriminating. As Gibson does not challenge whether he was required to count out loud during the field sobriety test, and indeed the record is unclear as to whether Gibson or Officer Will counted, we do not consider the issue at this time.

validity of the field sobriety tests and not to elicit, nor did it elicit, an incriminating response.

Accordingly, the decision of the trial court is affirmed.

<u>Affirmed.</u>