**UNITED STATES of America,**
**Appellee,**

v.

**Ricardo Casimiro RODRIGUEZ,**
**Defendant–Appellant.**

**Docket No. 03–1145.**

United States Court of Appeals,
Second Circuit.

Argued: Oct. 24, 2003.

Decided: Jan. 26, 2004.

Philip L. Weinstein, The Legal Aid Society, New York, NY, for Defendant–Appellant.

Michael A. Asaro, Assistant United States Attorney for the Eastern District of New York (Roslynn R. Mauskopf, United States Attorney, and Cecil C. Scott, Assistant United States Attorney, of counsel), Brooklyn, NY, for Appellee.

Before: McLAUGHLIN, CABRANES, and SACK, Circuit Judges.

SACK, Circuit Judge.

The defendant-appellant, Ricardo Casimiro Rodriguez, appeals from a judgment entered on March 4, 2003, in the United States District Court for the Eastern District of New York (Frederic Block, *Judge*), following a jury trial, convicting him of illegal reentry after deportation, in violation of 8 U.S.C. § 1326, and of passport and visa fraud, in violation of 18 U.S.C. §§ 1543 and 1546, respectively, and sentencing him principally to 63 months' imprisonment. Rodriguez argues that the district court erred in permitting Immigration and Naturalization Service ("INS") Special Agent Warren Smith to testify as to statements Rodriguez made to Agent Smith four years earlier, during an interview that took place while Rodriguez was incarcerated on Rikers Island on unrelated state charges. Rodriguez did not receive a warning under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before giving his statement to Agent Smith. For the following reasons, we reject Rodriguez's argument and affirm.

## BACKGROUND

On May 14, 1998, while serving a state sentence at Rikers Island Correctional Facility in New York City for Criminal Possession of a Controlled Substance in the Second Degree, Rodriguez was interviewed by Agent Smith pursuant to an INS policy of interviewing inmates whose national origin is listed as unknown or somewhere other than the United States. The purpose of the interview, according to Agent Smith's testimony given during Rodriguez's subsequent federal criminal trial, was to determine whether Rodriguez was subject to administrative deportation proceedings. Agent Smith conducted the interview by asking Rodriguez the questions listed on INS Form I–215c, titled "Affidavit in an Administrative Proceeding." Before he asked the questions, however, Agent Smith recited an introductory portion of the form, which included the statements: "You have the right to be represented by counsel of your choice at no expense to the Government," and, "Any statement you make may be used against you in a subsequent administrative proceeding." [1]

Agent Smith then asked Rodriguez the substantive questions listed on the Form

1. The entire preliminary statement reads:
 He [the INS agent] has told me that my statement must be freely and voluntarily given and has advised me of these rights:
 You have been arrested or interviewed because it is believed you are a [sic] alien not lawfully entitled to be or remain in the United States.
 You have the right to be represented by counsel of your choice at no expense to the Government.
 Any statement you make may be used against you in a subsequent administrative proceeding.

 A decision will be made within 24 hours or less as to whether you will be continued in custody or released on bond or recognizance.
 You are provided with a list of the available free legal services in this district which are qualified and/or recognized by the Immigration and Naturalization Service.
 I am willing to make a statement without any one [sic] else being present. I swear that I will tell the truth, the whole truth and nothing but the truth, so help me, [sic] God.

I–215c and wrote Rodriguez's answers on the form. Among the questions and answers were:

Q. What country are you a native of?

A. Dominican Republic.

Q. What country are you a citizen of? What country issued you a passport?

A. Dominican Republic.

. . . .

Q. What city and country were you born in?

A. Santo Domingo DR

Q. What was the date, place and manner of your last entry into the United States?

A. I last came to the United States on or about 10/26/90 at or near New York, N.Y. as a[sic] R–2 visitor for pleasure for a period not to exceed six months. It was my intention to live work and reside [here] indefinitely.

Rodriguez refused to sign the form, but Agent Smith signed it, and his signature was witnessed by one Richard Lutz.

Following the interview, an INS detainer was lodged against Rodriguez indicating that he was subject to administrative deportation upon completion of his sentence. And indeed, on April 10, 2001, when he completed his sentence, Rodriguez was deported. At that time, he was informed by two detention enforcement officers that he could not reenter the United States for ten years following his deportation without permission of the Attorney General.

Less than one year later, on March 27, 2002, Rodriguez was apprehended at John F. Kennedy International Airport attempting to reenter the United States without the Attorney General's permission by using a false name, passport, and visa. On October 17, 2002, Rodriguez was indicted for passport and visa fraud and illegal reentry after deportation.

During the course of his subsequent jury trial on these charges, Rodriguez moved to suppress Agent Smith's testimony as to his May 14, 1998, Rikers Island interview during which Rodriguez had stated, *inter alia,* that he was a citizen of the Dominican Republic. After a suppression hearing, the district court denied the motion, concluding that *Miranda* warnings were not required for an immigration official's routine administrative interview to determine whether an individual in custody is subject to deportation. Agent Smith was therefore permitted to, and did, describe the interview in the course of his testimony for the purpose of establishing that Rodriguez was not a United States citizen. There was substantial evidence in addition to Agent Smith's testimony bearing on Rodriguez's alienage. *See infra* at 260.

On appeal, Rodriguez asserts that his statements to Agent Smith were obtained during a custodial interrogation, that he was therefore entitled to a *Miranda* warning, and that, in its absence, Agent Smith's testimony about what Rodriguez said during the interview should have been suppressed. He urges us, on that basis, to vacate the judgment of the district court and to remand the case to the district court for a new trial.

## DISCUSSION

### I. Standard of Review

 The standard of review for evaluating the district court's ruling on a suppression motion is clear error as to the district court's factual findings, viewing the evidence in the light most favorable to the government, and *de novo* as to questions of law. *United States v. Brown,* 52 F.3d 415, 420 (2d Cir.1995), *cert. denied,* 516 U.S. 1068, 116 S.Ct. 754, 133 L.Ed.2d 701 (1996). Similarly, in evaluating the district court's findings on an issue of custody for

*Miranda* purposes, we review findings of fact for clear error, *United States v. Kirsh,* 54 F.3d 1062, 1067 (2d Cir.), *cert. denied,* 516 U.S. 927, 116 S.Ct. 330, 133 L.Ed.2d 230 (1995), and legal conclusions *de novo, United States v. Ali,* 86 F.3d 275, 276 (2d Cir.1996).

## II. Rodriguez's Motion to Suppress

### A. Custodial Interrogation Defined

Under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination," *id.* at 444, 86 S.Ct. 1602. Among those safeguards is the requirement that, prior to interrogation, the defendant be given, in substance, the following familiar warning:

> that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 479, 86 S.Ct. 1602; *see also Rhode Island v. Innis,* 446 U.S. 291, 297, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (summarizing *Miranda*).

A central inquiry in determining whether *Miranda* is applicable is thus whether the statement of the defendant that is at issue was made in the course of "custodial interrogation." We have observed that:

> Custodial interrogation exists when a law enforcement official questions an individual and that questioning was (1) conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to re-

sist and to compel him to speak, *Miranda,* 384 U.S. at 467, 86 S.Ct. 1602 (the in custody requirement) and (2) when the inquiry is conducted by officers who are aware of the potentially incriminatory nature of the disclosures sought (the investigative intent requirement). Only questioning that reflects a measure of compulsion above and beyond that inherent in custody itself constitutes interrogation the fruits of which may be received in evidence only after *Miranda* warnings have been given. The questions asked must have been both likely to elicit an incriminating response and to produce psychological pressures that will subject the individual to the "will" of his examiner.

*United States v. Morales,* 834 F.2d 35, 38 (2d Cir.1987) (citations other than to *Miranda* omitted). Rodriguez argues that his INS interview fulfills both requirements for custodial interrogation because he was in custody at the time Agent Smith questioned him and because Agent Smith's questioning was relevant to a potential criminal prosecution and was conducted by officers who were or should have been aware of the incriminatory nature of the disclosures.

### B. The "In Custody" Requirement

The district court did not analyze the "in custody" facet of the custodial interrogation inquiry under *Morales,* concluding that there was "no question but he was being interrogated in custody." Trial Transcript, at 165. On the face of it, the district court's observation seems correct inasmuch as Rodriguez was in prison at the time he was questioned. The "in custody" inquiry, however, is not entirely straightforward—that Rodriguez was incarcerated at the time of the interview may not be sufficient for a finding of custodial interrogation. *See United States v. Willoughby,* 860 F.2d 15, 23 (2d Cir.1988)

(explaining that "the mere fact of imprisonment does not mean that all of a prisoner's conversations are official interrogations that must be preceded by *Miranda* warnings"), *cert. denied,* 488 U.S. 1033, 109 S.Ct. 846, 102 L.Ed.2d 978 (1989). We have said that interrogation, for the purposes of *Miranda,* "must reflect a measure of compulsion above and beyond that inherent in custody itself." *United States v. Moody,* 649 F.2d 124, 127 (2d Cir.1981) (quoting *Innis,* 446 U.S. at 300, 100 S.Ct. 1682). Arguably, under *Morales,* for the "in custody" requirement to be met in this case, Smith's questions had to have been likely to produce coercive "psychological pressures" subjecting Rodriguez to the "will" of his examiner, which they may or may not have been. *See Morales,* 834 F.2d at 38. Because in our view Agent Smith's interview failed the second part of the *Morales* test, however, this is an issue that we need not and do not decide. We assume for purposes of this opinion that Rodriguez was "in custody" when he was interrogated.

*C. The "Awareness of the Potential Incriminatory Nature of the Disclosures Sought" Requirement*

▮ The second prong of the *Morales* test is whether "the inquiry is conducted by officers who are aware of the potentially incriminatory nature of the disclosures sought." *Morales,* 834 F.2d at 38. Agent Smith testified without contradiction that his interview of Rodriguez was conducted solely for the purpose of determining whether Rodriguez would be subject to administrative deportation after his release. Smith also testified that he was not aware that information that he elicited could be the basis for criminal prosecution. Indeed, the only information that Rodriguez gave Agent Smith that might have been relevant to a prosecution was that Rodriguez, having entered the United State legally, had deliberately overstayed his visa. This is not a crime for which Rodriguez was ever prosecuted.

▮ The result of Smith's interview of Rodriguez was congruent with the purpose of the interview: Rodriguez was deported administratively. The information disclosed in the interview did not become relevant to a criminal proceeding against Rodriguez until three years later, when Rodriguez broke the law by fraudulently attempting to reenter the United States, without the permission of the Attorney General, using a fake passport. There is nothing in the record to indicate that Agent Smith knew or should have known that evidence for an eventual prosecution would emerge from his administrative interview of Rodriguez. The district court thus did not err in finding that Agent Smith was unaware of the potentially incriminatory nature of the disclosures he sought from Rodriguez.[2] No *Miranda* warning was required.

**2.** This result is consistent with, if not necessarily dictated by, the well-settled principle that pedigree information solicited through routine questioning of arrested persons by law enforcement officers at the booking stage does not implicate the protections of *Miranda. See United States v. Carmona,* 873 F.2d 569, 573 (2d Cir.1989); *United States ex rel. Hines v. LaVallee,* 521 F.2d 1109, 1113 (2d Cir. 1975). "Routine questions about a suspect's identity and marital status, ordinarily innocent of any investigative purpose, do not pose the dangers *Miranda* was designed to check; they are rather the sort of questions 'normally attendant to arrest and custody.'" *United States v. Gotchis,* 803 F.2d 74, 79 (2d Cir. 1986) (quoting *Innis,* 446 U.S. at 301, 100 S.Ct. 1682). *See also United States v. Adeghite,* 846 F.2d 834, 838–39 (2d Cir.1988) ("[T]he solicitation of information concerning a person's identity and background does not amount to custodial interrogation prohibited by *Miranda* . . . .").

*United States v. Salgado*, 292 F.3d 1169 (9th Cir.2002), relied upon by the district court, although not binding upon us, supports our conclusion. In *Salgado*, the defendant, while incarcerated on a state weapons charge, was interviewed by an INS agent to determine whether he was subject to deportation. At the time of the interview, the defendant had not yet committed an offense to which his citizenship or nationality would be relevant. *Id.* at 1172. The INS agent had no reason to think that the defendant's statements would later incriminate him. *Id.* "[T]he questioner [could not] have reasonably suspected that the question was likely to elicit an incriminating response." *Id.* at 1174. Therefore, the court concluded, the INS interview was not "interrogation" for the purpose of *Miranda*. *Id.* Our conclusion is the same.

Rodriguez relies heavily on *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968). There, the Supreme Court reversed a conviction for tax fraud because incriminating statements obtained by an IRS agent while the defendant was incarcerated in state prison on other charges had not been preceded by *Miranda* warnings. *Id.* at 5, 88 S.Ct. 1503. But the IRS's investigatory interrogation in *Mathis* was dissimilar from the INS's administrative inquiry here. There, an IRS investigation (albeit a "routine" one) of the defendant with respect to specific, questionable tax returns he had filed with the IRS was underway at the time of the interview. It is clear from the Court's recitation of the facts of the case that the purpose of the investigation under consideration was, *inter alia*, to obtain evidence in connection with a possible subsequent civil or criminal prosecution, criminal prosecution of the defendant being a likely outcome. *Id.* at 2–3, 88 S.Ct. 1503. The interview was thus in marked contrast to the questioning of Rodriguez by Agent

Smith in the case before us, where there is no basis in the record to conclude that Agent Smith knew or should have known that the results of his interview would be used to support criminal charges resulting from conduct of Rodriguez—conduct that would not take place until three years thereafter. Thus, in *Mathis*, the government was clearly "aware [at the time of the interrogation] of the potentially incriminatory nature of the disclosures sought," *Morales*, 834 F.2d at 38; in the case before us, the government was not. We therefore conclude that *Mathis* does not require a reversal here.

## III. Harmless Error

■ In addition to Agent Smith's testimony, the government introduced other evidence to establish the easily provable fact that Rodriguez was an alien: (1) testimony by Senior INS Inspector Cerda about Rodriguez's "A" file, or alien file (a file maintained only for aliens), which contained no certificate stating that Rodriguez had attained United States citizenship; (2) testimony by Inspector Cerda indicating that the INS computer database had produced no evidence that Rodriguez had asked permission to reenter the United States legally; (3) testimony by two INS inspectors that Rodriguez had used fraudulent travel documents in attempting to reenter the United States; and (4) testimony by three detention enforcement officers that they deported Rodriguez from Philadelphia to the Dominican Republic. The government referred to the first three in its closing argument before the jury.

In light of this evidence, we conclude that even if the district court's decision to admit Agent Smith's testimony were erroneous, the error would be harmless. Even without Agent Smith's testimony, there was overwhelming evidence that Rodriguez was an alien. The government has

shown pursuant to *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), that "beyond reasonable doubt ... the error complained of did not contribute to the verdict obtained," *id.* at 24, 87 S.Ct. 824; *cf. United States v. Wilson,* 11 F.3d 346, 351 (2d Cir.1993) (concluding that the introduction of a handgun was harmless error when "overwhelming" evidence establishing defendant's guilt was introduced at trial), *cert. denied,* 511 U.S. 1130, 114 S.Ct. 2142, 128 L.Ed.2d 870 (1994).

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.