14-527-cr
*United States v. Broughton*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of January, two thousand fifteen.

PRESENT:  RALPH K. WINTER,
               JOSÉ A. CABRANES,
               REENA RAGGI,
                       *Circuit Judges.*

---

UNITED STATES OF AMERICA,

         *Appellee,*

            v.

                                             No. 14-527-cr

STEPHANNIE BROUGHTON,

         *Defendant-Appellant,*

RORIANNE PRAWL,

         *Defendant.*

---

| | |
|---|---|
| **FOR DEFENDANT-APPELLANT:** | DARRELL B. FIELDS, Federal Defenders of New York, Inc., New York, NY. |
| **FOR APPELLEE:** | PETER A. NORLING, Melody Wells, Assistant United States Attorneys, *for* Loretta E. Lynch, United States Attorney, Eastern District of New York, Brooklyn, NY. |

Appeal from the February 6, 2014 judgment of the United States District Court for the Eastern District of New York (Kiyo A. Matsumoto, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the District Court's February 5, 2014 judgment of conviction and sentence is **AFFIRMED** in part, and **REMANDED** in part for the sole purpose of correcting the formal judgment.

## BACKGROUND

### A.

On February 14, 2013, defendant-appellant Stephannie Broughton arrived at John F. Kennedy International Airport ("JFK") on a flight from Jamaica. Before Broughton reached the airport's customs checkpoint, she was randomly selected for an examination of her luggage by a uniformed Customs and Border Protection ("CBP") officer, Christopher Aronica. Aronica initially examined Broughton's luggage in an open area, just beyond the customs checkpoint. Inside one of Broughton's bags, Aronica found a woman's wedge-heeled shoe that was "very heavy." When Aronica probed the shoe, he detected a "white powdery substance" stored inside the shoe's heel.

Aronica then moved Broughton to the CBP's private search area, where a field test of the white substance found in the shoe tested positive for cocaine, prompting Broughton's arrest. A further search of Broughton's luggage uncovered three additional wedge-heeled shoes containing cocaine.

While Broughton's bags were being examined in the private search area, she made three statements to CBP officers: (1) that the shoes did not belong to her; (2) that the shoes belonged to a friend with whom she was traveling; and (3) that her friend might have had "some kind of connection with drugs and shoes." At a suppression hearing in the District Court, Aronica testified that he could not recall whether any of the statements were volunteered or made in response to questioning, but that, at the very least, the third statement was made post-arrest. Another CBP officer, whose identity Aronica could not recall, asked Broughton to describe her friend; Broughton showed the officers a picture of her co-defendant, Rorianne Prawl, on her cellphone. Prawl was thereafter located in the airport lobby and arrested.

After Broughton's arrest, Homeland Security Investigations ("HSI") Special Agent Bergman responded to the CBP location, where he spoke to Aronica for "[a]bout a minute," receiving a summary of what happened—*i.e.*, the "name of the person, where [she was] coming from, and the method of concealment." Bergman was not told, however, of Broughton's statements. Bergman began to interview Broughton in the presence of two other HSI agents, but with neither Aronica, nor any other CBP officer, in the room.

Before commencing this interview, HSI Special Agent Reed advised Broughton of her *Miranda* rights. Broughton waived her rights and agreed to be interviewed. The three HSI agents then proceeded to interview Broughton for about 15 minutes in the private search room. After this initial interview, the HSI agents relocated to their office in Terminal 4 for a follow-up interview. This second interview started about 45 minutes after the initial interview concluded, lasted between 90 minutes and two hours, and was conducted by Special Agents Bergman and Reed. During these two interviews, Broughton discussed, *inter alia*, her previous travel history, the purpose of her trip to the United States, her actions the day before her flight, how the shoes came to be in her luggage, her relationship with Prawl, and her knowledge of Prawl's "connection to illegal narcotics."

**B.**

Broughton moved to suppress her statements to the CBP officers and HSI agents. After a suppression hearing, at which it heard testimony from Aronica, Bergman, and Reed, the District Court issued a Memorandum & Order, denying suppression. First, the District Court held that the three statements Broughton made to Aronica should not be suppressed for failure to give *Miranda* warnings, because: (1) the first two statements—that the shoes were not hers and that they belonged instead to her friend, Prawl—were made while Broughton was not in custody; and (2) the third statement—that Prawl had a connection to drugs and shoes—was not made in response to interrogation. Second, the District Court held that Broughton's post-*Miranda* statements made to Special Agents Bergman and Reed should not be suppressed, because they were not the result of a deliberate or questionable two-step continuous interrogation by the CBP officers and HSI agents.

After a jury trial, Broughton was convicted of four criminal offenses: (1) conspiracy to import cocaine (21 U.S.C. §§ 952(a), 960(b)(3), 963); (2) importation of cocaine (*id.* §§ 952(a), 960(a)(1)); (3) conspiracy to possess a controlled substance with intent to distribute (*id.* §§ 846, 841(a)(1)); and (4) possession of a controlled substance with intent to distribute (*id.* § 841(a)(1)). On February 3, 2014, the District Court principally sentenced Broughton to seven months' imprisonment and three years of supervised release.

Broughton timely appealed her judgment of conviction and sentence.

**DISCUSSION**

The sole disputed issue on appeal is whether the District Court erred in denying Broughton's motion to suppress the statements she made (1) to CBP Officer Aronica and (2) to HSI Special Agent Bergman.

**A.**

The District Court properly admitted the three statements Broughton made to Officer Aronica. While Aronica did not advise Broughton of her *Miranda* rights, these prophylactic warnings

3

are required only when a defendant is "interrogated" while "in custody." *United States v. FNU LNU*, 653 F.3d 144, 148 (2d Cir. 2011); *see also United States v. Rodriguez*, 356 F.3d 254, 258 (2d Cir. 2004) (the central inquiry in determining whether *Miranda* applies is whether the statements at issue were made "in the course of custodial interrogation") (internal quotation marks omitted). Determining whether a defendant was in custody

> involves two discrete inquiries[:] first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. The first inquiry is distinctly factual, while the second is a mixed question of law and fact which the appellate court reviews *de novo*.

*United States v. Badmus*, 325 F.3d 133, 138 (2d Cir. 2003) (internal citations, quotation marks, ellipses, and brackets omitted). In evaluating a district court's findings on an issue of custody for *Miranda* purposes, we review findings of fact for clear error and legal conclusions *de novo. Rodriguez*, 356 F.3d at 257–58.

Applying these standards, we conclude, as the District Court did, that Broughton was not *in custody* for purposes of *Miranda* until she was placed under arrest. While Broughton asserts that she was in custody from the time Aronica moved her to the private search room, we disagree. As we have previously stated, a reasonable traveler arriving at an American airport "will expect some constraints as well as questions and follow-up about his or her citizenship, authorization to enter the country, destination, baggage, and so on." *United States v. FNU LNU*, 653 F.3d at 153–54. Here, Aronica was engaged in a routine aspect of border control—examining a suspicious item, a white powdery substance, in Broughton's luggage. Upon discovering the substance, Aronica escorted Broughton, without placing her in handcuffs, to a more private part of the airport, where he field-tested the substance. Four minutes after Broughton was placed in the private search room, Aronica formally arrested Broughton. It was only then that she was "in custody" for purposes of *Miranda.*

In any case, even if Broughton was in custody when she made all three of her statements to Aronica, the *Miranda* requirement was still not triggered because, as the District Court correctly concluded, Aronica did not *interrogate* Broughton within the meaning of *Miranda* jurisprudence. The Supreme Court has explained that interrogation can take the form of "express questioning" or its "functional equivalent," which includes "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). However, because "the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Id.* at 301–02 (emphasis in the original). In assessing whether the police "should have

4

known" that their actions were reasonably likely to elicit an incriminating response, we again consider "the totality of the circumstances." *Acosta v. Artuz*, 575 F.3d 177, 191 (2d Cir. 2009).

Here, the District Court credited Aronica's testimony that he had not asked "any questions regarding whether Broughton or Prawl were involved with drugs." *App'x* 161. Rather, "Broughton appears voluntarily and spontaneously to have made statements regarding her friend's ownership of the shoes and that Broughton traveled from Jamaica with that friend, and that she did not provide this information in response to any specific questions by CBP." *Id.* at 159. Broughton asserts, however, that Aronica and the other CBP officers engaged in the functional equivalent of interrogation by examining the shoes and conducting a field test for narcotics in her presence. As we understand Broughton's argument, the CBP officers should have known that these actions were reasonably likely to elicit an incriminating response from Broughton. The record, however, shows that Aronica merely continued to search Broughton's bag for contraband in the private search room. The District Court correctly applied controlling precedent in concluding that "[t]his ongoing search is not the type of activity that was likely to elicit an incriminating response." *Id.* 162 (citing Rodriguez, 356 F.3d at 258).

Because the *Miranda* requirement was not triggered before Broughton made her three statements to Aronica, the District Court did not err in denying Broughton's motion to suppress these statements.

**B.**

Second, the District Court also properly admitted the subsequent statements Broughton made to the HSI. It is undisputed that these statements were the product of an interrogation that took place after Broughton was advised of and waived her *Miranda* rights. Under *Oregan v. Elstad*, if Broughton's prewarning statements to Aronica were voluntary, then her postwarning statements to HSI are admissible unless, despite the *Miranda* warning, they were made involuntarily. *See* 470 U.S. 298, 309 (1985). Here, the prewarning statements were plainly voluntary, *see supra*, and it is undisputed that the postwarning statements to the HSI agents were voluntary as well. Therefore, the latter statements are admissible under *Elstad*.

Broughton asserts that these statements should nonetheless be suppressed pursuant to *Missouri v. Seibert*, 542 U.S. 600 (2004), which "lays out an exception to *Elstad* for cases in which a deliberate, two-step strategy was used by law enforcement to obtain the postwarning confession." *United States v. Carter*, 489 F.3d 528, 535 (2d Cir. 2007). For the reasons stated in the District Court's well-reasoned opinion, we conclude that Broughton was not subjected to a deliberate two-step interrogation. There is no record evidence that these CBP officers and HSI agents intended to coerce a confession by using two-rounds of questioning. Rather, the record establishes that CBP officers conducted no interrogations at all in eliciting statements that Broughton sought to

suppress.[1] Instead, the responsibility for conducting Broughton's interrogation rested with the HSI agents, who immediately advised Broughton of her *Miranda* rights before questioning her. In short, we agree with the District Court that "the differences between the two interviews in terms of their extensiveness, their setting and timing, the personnel involved, and subject matter" indicate that the officers and agents in this case did not engage in a deliberate two-step interrogation.

Because Broughton's statements to the HSI agents were knowingly and voluntarily made, the District Court correctly denied Broughton's motion to suppress these statements.

## C.

Finally, both sides agree that the District Court's formal judgment incorrectly identifies the offenses of conviction, in that it states that Broughton was found guilty of possessing "[f]ive kilograms or more of cocaine" when, in fact, the jury made no findings regarding quantity. Therefore, while we affirm Broughton's conviction and sentence, we vacate and remand the cause solely to enable the District Court to undertake the ministerial duty to correct this error in the judgment. *See United States v. Dennis*, 271 F.3d 71, 74 (2d Cir. 2001).

## CONCLUSION

For the reasons stated above, the District Court's February 5, 2014 judgment of conviction and sentence is **AFFIRMED** in part, and **REMANDED** in part for the sole purpose of correcting the formal judgment.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court

---

[1] Broughton did not move to suppress her responses to CBP officers' post-arrest inquiries about the identity of the traveling companion. Thus, we need not here address the circular reasoning relied on by the government at oral argument to suggest that such questioning did not require *Miranda* warnings because of the "division of labor" between CBP and HSI officials.

6